# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

GLEN EDWARD ROGERS,

       Petitioner,

v.                               CASE NO. 8:07-CV-1365-T-30TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

       Respondents.
_____/

## <u>ORDER</u>

This cause is before the Court on Petitioner Glen Rogers' (hereinafter "Petitioner" or "Rogers") petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (hereinafter "petition") (Dkt. 1). Petitioner is a Florida prisoner under sentence of death. Petitioner filed a memorandum of law in support of the petition (hereinafter "memo") (Dkt. 13). Respondent filed a response to the petition (Dkt. 18), and Petitioner filed a reply to the response (Dkt. 21). Upon consideration of each of Petitioner's claims, the Court has determined that none has merit and that Petitioner's request for federal habeas relief (Dkt. 1) is **DENIED**.

## BACKGROUND

Petitioner was convicted in 1997 of first-degree murder, robbery with a deadly weapon, and grand theft motor vehicle. He was sentenced to death on the first degree murder

charge.[1]  Petitioner's convictions and sentences were affirmed by the Florida Supreme Court on March 1, 2001.  *See Rogers v. State*, 783 So.2d 980 (Fla. 2001).  Petitioner initiated state court post-conviction proceedings in September 2001.  In March 2005, the state trial court denied Petitioner's post-conviction motion.  On January 18, 2007, the Florida Supreme Court affirmed the denial of Petitioner's post-conviction motion, and denied Petitioner's petition for writ of habeas corpus.  *See Rogers v. State*, 957 So. 2d 538 (Fla. 2007).  The Florida Supreme Court's mandate issued on June 26, 2007.

Petitioner filed the instant federal habeas petition on August 3, 2007.

**FACTS**[2]

Rogers was convicted of first-degree murder, armed robbery, and grand theft of a motor vehicle and sentenced to death for the brutal stabbing of Tina Marie Cribbs in a Tampa motel room. Cribbs was last seen alive leaving the Showtown Bar in Tampa with Rogers on Sunday, November 5, 1995. A bartender testified that Rogers arrived at the bar around 11 a.m. Cribbs and three female friends arrived a few hours later.  Rogers purchased the women a round of drinks and introduced himself to several bar patrons as "Randy." Rogers informed Cribbs and her friends that he had no interest in married women or women with boyfriends. Rogers asked Cribbs, the only single woman of the group, for "a ride" and she agreed. Upon

---

[1]He was sentenced to life imprisonment on the robbery/deadly weapon charge, and sentenced to 5 years in prison on the grand theft motor vehicle charge.

[2]The facts are taken from the Florida Supreme Court's opinion affirming Petitioner's convictions on direct appeal. *Rogers v. State*, 783 So.2d 980, 985-87 (Fla. 2001).

leaving the bar with Rogers, Cribbs told one of her friends that she would be back in fifteen or twenty minutes to meet her mother.

When Cribbs' mother, Mary Dicke, arrived twenty minutes later to meet her daughter as they had planned, Cribbs had not yet returned. Dicke waited for her daughter at the bar for nearly an hour and a half. Then Dicke began paging Cribbs, but received no response despite thirty pages. According to Dicke, it was unusual for her daughter not to return her calls. The next morning, Cribbs did not show up for work.

A motel clerk testified that Rogers had arrived at the motel by cab on Saturday, November 4, 1995. Rogers told the motel clerk that he was a truck driver whose truck had broken down. At that time, Rogers paid for a two-night stay. A desk clerk testified that Rogers returned to the motel office on Sunday evening, November 5, 1995. Shortly before Rogers entered the motel office, the clerk had observed Rogers with two suitcases near his motel room. According to the clerk, it appeared as if Rogers was packing a white Ford Festiva automobile. Rogers then entered the motel office, paid for an additional night's stay at the motel, informed the clerk that he did not want anyone going into his room, and requested a "Do Not Disturb" sign. When the clerk informed Rogers that the motel did not have such signs, Rogers requested that the clerk leave a note for the cleaning crew not to enter and clean his room. The next morning, at approximately 9 a.m., the clerk saw Rogers leaving the motel alone in the same white automobile. The evidence at trial established that the white vehicle belonged to Cribbs.

On Tuesday, November 7, 1995, a cleaning person at the motel went into the room that Rogers had rented. The cleaning person noticed a handwritten "Do Not Disturb" sign hanging on the doorknob.[3] She testified that she had observed the same sign hanging on the door on Monday morning and thus did not enter the room to clean it. Upon entering the room on Tuesday, the cleaning person found Cribbs' body in the bathroom. Cribbs was found lying on her back in the bathtub. She was clothed, wearing a damp T-shirt, underwear, and socks. On the bathroom floor, authorities found a damp pile of clothes and bloodstained towels. A pager and black wristwatch were lying at Cribbs' feet in the bathtub. Although Cribbs' mother testified that her daughter habitually wore a sapphire and diamond square ring and a gold heart-shaped watch, no such jewelry was recovered from Cribbs' body.

The State's forensic pathologist estimated that Cribbs could have been dead for one to three days before she was found. He testified that Cribbs died as a result of two stabs [sic] wounds, one to the chest and one to the buttocks. In addition to these injuries, Cribbs had several bruises and abrasions, and a shallow wound to her left arm, which the pathologist believed was a defensive wound. The evidence showed that Cribbs had been wearing her clothing when she was stabbed.

A senior forensic serologist with the Florida Department of Law Enforcement ("FDLE") also testified for the State. He found no evidence of semen in Cribbs' body. An FBI agent who was an expert in the field of forensic serology also testified that the blue jean

---

[3]The State and the defense stipulated that "Glen Rogers is the person who wrote the 'do not disturb' sign" and further agreed that Rogers was the person who filled out the motel registration card that was presented into evidence by the State.

shorts and T-shirts found in the motel bathroom tested positive for blood. In addition, a biological forensic examiner for the DNA unit of the FBI testified that neither Cribbs nor Rogers could be excluded as a contributor to the blood stains on the jean shorts. He also stated that Rogers was a potential contributor to the DNA samples found on a T-shirt recovered from Cribbs' vehicle.

The State established through the testimony of maintenance workers that Cribbs' wallet was found early in the afternoon of Monday, November 6, 1995, at a rest area on Interstate-10 ("I-10") near Tallahassee, Florida. A crime lab analysis revealed that two latent fingerprints belonging to Rogers were inside the wallet. Fingerprints lifted from the motel room also matched Rogers' fingerprints.

Rogers was eventually apprehended in Kentucky on November 13, 1995, a week after Cribbs was murdered. After being informed that Rogers was in the area, Detective Robert Stephens saw Rogers driving a white Ford Festiva and requested back-up. A high speed chase ensued, and during this pursuit, Rogers threw beer cans at the pursuing officers as he tried to elude them. Authorities set up a roadblock and successfully forced Rogers off the roadway.

A subsequent inventory of Cribbs' vehicle revealed a substantial amount of food, a cooler, a duffel bag, a comforter, two pillows, Mississippi and Florida license plates, a key to the motel room where Cribbs' body was found, and a bloodstained T-shirt. A small smear on the inside driver's door tested positive for blood. Police also found a pair of blue jeans, which contained blood.

During an interview with Kentucky Police, Rogers claimed that "a girl," whom he could not describe, loaned him the vehicle. Rogers stated that he met the "girl" in a bar and brought her to his motel room. After dropping the "girl" off at the motel, Rogers left to get some beer and cigarettes. According to Rogers, the "girl" was alive when he left and Rogers claimed that he never returned, or intended to return, to the motel. This statement contradicted the testimony of the motel desk clerk, who testified that he saw Rogers leaving the motel on Monday morning. When the investigating officer stated that he just wanted Rogers to tell the truth, Rogers replied, "I can't tell you the truth."

In his defense, Rogers attempted to establish that someone else was the perpetrator of Cribbs' murder. First, the defense introduced the testimony of Tampa police officers who stated that the surrounding area of the motel was a high crime area and that many of the residents of that motel and the motel located across the street had criminal records. The defense established that the Tampa Police did not investigate any of these individuals as potential suspects in the murder. According to the defense, this supported the defense's theory that the Tampa police "rushed to judgment" in this case.

Second, the defense called another highway maintenance worker who testified that Cribbs' wallet was not recovered on Monday afternoon, but that it was found around 10:30 a.m. According to the defense, the time the wallet was found was crucial because if Rogers had left the Tampa area at 9 a.m., as the motel desk clerk testified, he could not have disposed of the wallet at the highway rest stop near Tallahassee any earlier than 1 p.m.

Finally, the defense also called several expert witnesses, including Dr. John Feegel, a forensic pathologist, consulting medical examiner and practicing attorney. Doctor Feegel estimated that Cribbs died approximately twenty-nine or thirty hours before she was found. Contrary to the State expert's estimate, Dr. Feegel opined that it was unlikely that Cribbs had been dead for forty-eight hours before her body was discovered.

Rogers was convicted on all charges and, at the conclusion of the penalty-phase proceedings, the jury unanimously recommended the death penalty. The trial court accepted the jury's recommendation and sentenced Rogers to death. The trial court found two aggravating circumstances: (1) that the murder was committed for pecuniary gain; and (2) that the murder was heinous, atrocious, or cruel ("HAC"). The court found one statutory mitigating circumstance--that Rogers' capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired (some weight). The court also found the following nonstatutory mitigating circumstances: (1) Rogers had a childhood deprived of love, affection or moral guidance and lacked a moral upbringing of good family values (slight weight); (2) Rogers' father was an alcoholic who physically abused Rogers' mother in the presence of Rogers and his siblings (slight weight); (3) Rogers was introduced to controlled substances at a young age and encouraged by his older brother to participate in burglaries (slight weight); (4) Rogers has been lawfully and gainfully employed at various times in his adult life (slight weight); (5) Rogers was solely responsible for the care of his two children at one time in his adult life (slight weight); and

(6) Rogers had been drinking alcohol for a few hours on the day he came into contact with the victim (little weight).

**STANDARDS OF REVIEW**

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003); *Maharaj v. Sec'y of Dept. of Corrections*, 304 F.3d 1345, 1346 (11th Cir. 2002). The ultimate issue with respect to each claim is whether the Florida Supreme Court's resolution of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). *Williams v. Taylor*, 529 U.S. 362 (2000); *Robinson v. Moore*, 300 F.3d 1320 (11th Cir. 2002); *Van Poyck v. Florida Department of Corrections*, 290 F.3d 1318 (11th Cir. 2002). The standard Petitioner must meet could not be higher; it is not enough that the state court "got it wrong." Petitioner must show that the state court's decision was objectively unreasonable. *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor, supra*).

In the event constitutional error is found in a habeas proceeding, the relevant harmless error standard is set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). The test is "less onerous" then the harmless error standard enunciated in *Chapman v. California*, 386 U.S. (1967). "The test is whether the error had substantial and injurious effect or influence in determining the jury's verdict. Under this standard, habeas petitioners may obtain plenary

review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht*, 507 U.S. at 637. Although no constitutional error has occurred in Petitioner's case, any possible error would be harmless beyond any reasonable doubt based on the facts and the record herein.

No evidentiary hearing is required because none of Petitioner's claims turn on any unresolved issue of fact. All involve issues of law argued on the basis of the existing record.[4]

**Ineffective Assistance of Counsel Standard**

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland's* two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

**DISCUSSION**

**Ground One**

"The trial court erred by failing to grant a Judgment of Acquittal as to first-degree murder because the State failed to present sufficient evidence (1) that Rogers intended to rob Tina Cribbs at the time of her murder, or (2) that he premeditated the murder. The error violated Petitioner's rights under the fifth, sixth, eighth, and fourteenth amendment to the United States Constitution and the corresponding provision of the Florida Constitution." (Dkt. 1 at pg. 3).

---

[4]The state trial court conducted an evidentiary hearing. Its findings are "presumed to be correct" (28 U.S.C. § 2254(e)(1)) and there is no showing that its decision "was based on an unreasonable determination of the facts. . ." (28 U.S.C. § 2254(d)(2)).

In Ground One, Rogers complains that his motion for judgment of acquittal on the first-degree murder charge should have been granted because the State failed to present sufficient evidence that Rogers premeditated the murder, or intended to rob the victim at the time of the murder.   In denying this claim, the Florida Supreme Court stated:

> In his first point on appeal, Rogers contends that the trial court erred in failing to grant his motion for judgment of acquittal because the State failed to present sufficient evidence to support a premeditated or felony murder conviction. A motion for judgment of acquittal should be granted in a circumstantial evidence case if the State fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt. *See Orme v. State*, 677 So. 2d 258, 261-62 (Fla. 1996).
>
>> [The court's] view of the evidence must be taken in the light most favorable to the state. The state  is not required to "rebut conclusively every possible variation" of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events.
>
> *State v. Law*, 559 So. 2d 187, 188-89 (Fla. 1989) (citations omitted). The trial court's finding denying a motion for judgment of acquittal will not be reversed on appeal if there is competent substantial evidence to support the jury's verdict. *See Orme*, 677 So. 2d at 262.
>
> FN3 A general verdict form was used in this case. Thus, in order to affirm Rogers' first-degree murder conviction, the evidence must support either premeditated or felony murder. *See Jones v. State*, 748 So. 2d 1012, 1024 (Fla. 1999) (citing *Mungin v. State*, 689 So. 2d 1026, 1029-30 (Fla. 1995)).
>
> We first examine Rogers' contention that the trial court erred in failing to grant a judgment of acquittal on the first-degree murder charge because the State failed to present sufficient evidence to support either premeditated or felony murder. "Premeditation is defined as more than a mere intent to kill; it is a fully formed conscious purpose to kill." *Green v. State*, 715 So. 2d 940, 943 (Fla. 1998). This purpose to kill must exist for such a time before the homicide "to permit reflection as to the nature of the act to be committed and the probable result of that act." *Id*. at 944. Premeditation can be shown by

circumstantial evidence. *See Woods v. State*, 733 So. 2d 980, 985 (Fla. 1999). Whether the State's evidence fails to exclude all reasonable hypotheses of innocence is a question of fact for the jury. *See Cochran v. State*, 547 So. 2d 928, 930 (Fla. 1989). As this Court has stated:

> Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted.

*Green*, 715 So. 2d at 944.

*Citing Jimenez v. State*, 703 So. 2d 437, 440 (Fla. 1997), and *Preston v. State*, 444 So. 2d 939, 944 (Fla. 1984), the State contends that the deliberate use of a knife to stab a victim multiple times in vital organs is sufficient evidence to support a finding of premeditation in this case. However, relying on *Kirkland v. State*, 684 So. 2d 732, 734-35 (Fla. 1996), and *Green*, 715 So. 2d at 944, Rogers contends that the evidence that the victim had been repeatedly stabbed is insufficient evidence supporting the State's allegation that Rogers committed premeditated murder. Despite Rogers' assertions, we find Rogers' reliance on *Kirkland* and *Green* is misplaced.

In *Kirkland*, the fact that the victim's death was caused by a "very deep, complex, irregular wound of the neck," did not in itself support premeditation. 684 So. 2d at 734-35. According to the Court, premeditation could not be established in light of the "strong evidence militating against a finding of premeditation," including the fact that there was "no suggestion that Kirkland exhibited, mentioned, or even possessed an intent to kill the victim at any time prior to the actual homicide" and where "Kirkland had an IQ that measured in the sixties." *Id.* at 735; see *Green*, 715 So. 2d at 944 (finding that the State's evidence was insufficient to establish premeditated murder where "there was little, if any, evidence that Green committed the homicide according to a preconceived plan" and where Green's intelligence was "exceedingly low").

In contrast to *Kirkland* and *Green*, the deliberate nature of the two wounds in this case is particularly compelling evidence of premeditation. Cribbs died as a result of two stab wounds, one to her chest and the other to the right buttock. The fatal wounds were 8.5 and 9 inches deep. In each stab wound, the knife had been twisted ninety degrees causing an L-shaped wound. The pathologist testified that the wound to the buttocks had the same L-shape and was inflicted

in precisely the same manner as the wound to the chest. The pathologist testified to his opinion that the instrument was inserted; then after an interval, twisted and pulled out. Thus, the unusual nature of the two almost identically shaped and inflicted knife wounds demonstrates that the victim was carefully stabbed in a deliberate manner in order to effect her death.

In addition to the deliberate nature of these stab wounds, other circumstances are present in this case that support a finding that the killing was the result of a preconceived plan. The State's theory was that Rogers' primary motive in killing Cribbs was to steal her property, especially her vehicle. This theory is supported by multiple circumstances that occurred both before and after the murder. At the time Rogers met Cribbs, Rogers had no motor vehicle. Witnesses testified that Rogers arrived at both the bar and the motel by cab. Evidence also showed that Rogers introduced himself to bar patrons using an assumed name and began soliciting people for "a ride." According to trial testimony, Rogers was looking for transportation because he needed to "get some money." After Rogers purchased Cribbs and her friends several rounds of drinks, Cribbs agreed to give Rogers "a ride." Rogers and Cribbs thereafter left the bar together. This was the last time that Cribbs was seen alive.

At approximately 9:30 p.m. Sunday evening, a motel clerk observed Rogers placing luggage near Cribbs' vehicle. The next morning at around 9 a.m., the motel clerk noticed Rogers leaving the motel in the victim's car. At the time Rogers was apprehended in Kentucky a week after the murder, Rogers was still driving and appeared to be living in Cribbs' vehicle.

These additional circumstances provide competent substantial evidence to support the denial of the motion for judgment of acquittal on the charge of first-degree murder and also support a finding on the alternative ground of felony murder predicated on robbery. Robbery is "the taking of money or other property which may be the subject of larceny from the person or custody of another when in the course of the taking there is the use of force, violence, assault, or putting in fear." § 812.13(1), Fla. Stat. (1995). This Court addressed the standard for establishing a robbery in *Jones v. State*, 652 So. 2d 346, 349-50 (Fla. 1995). Property that is the subject of the taking need not be in the actual physical possession or immediate presence of the person who was robbed. *See id.* at 350. Property is taken from "the person or custody of another" if it is sufficiently under the victim's control so that the victim could have prevented the taking if he or she had not been subjected to the violence or intimidation by the robber. *See id.* Under section 812.13(3)(b), Florida Statutes (1989), the violence or intimidation may occur prior to,

contemporaneous with, or subsequent to the taking of the property so long as both the act of violence or intimidation and the taking constitute a continuous series of acts or events. *See Jones*, 652 So. 2d at 349. The taking of property after a murder, however, does not constitute robbery if the motive for the murder was not the taking of property. *See Mahn v. State*, 714 So. 2d 391, 397 (Fla. 1998) (citing *Knowles v. State*, 632 So. 2d 62, 66 (Fla. 1993), and *Parker v. State*, 458 So. 2d 750, 754 (Fla. 1984)).

FN4 In *Jones*, 652 So. 2d at 349-50, the Court applied the 1989 version of the State's robbery statute. Since that decision, the Legislature has not changed or amended the robbery statute.

In addition to the evidence regarding the taking of the motor vehicle, a witness testified that Cribbs always carried her wallet and purse. Testimony also demonstrated that Cribbs habitually wore jewelry, including a sapphire, a diamond, and a Mother's Day ring, as well as a gold heart-shaped watch. No such items were recovered from the crime scene. However, the victim's wallet was recovered in a trash can at a rest area on I-10 hours after Rogers had fled the motel in Cribbs' car. Although the wallet did not contain any money, it did contain two fingerprints matching Rogers' fingerprints.

Finally, we reject Rogers' assertion that the evidence demonstrates that the killing was a result of a sexual relationship gone awry and not the result of premeditation. In addition to the affirmative evidence of both premeditation and felony murder based on robbery, there is little evidence to support Rogers' hypothesis that the murder occurred in a frenzy following a sexual encounter. Cribbs was found with her clothes on in the bathtub with two deliberately inflicted stab wounds and there is no evidence of any semen in the victim's body or any indication of a sexual encounter. Accordingly, there was competent substantial evidence to support a conviction for first-degree murder based on either premeditation or felony murder and the trial court did not err in failing to grant Rogers' motion for a judgment of acquittal.

*Rogers v. State*, 738 So. 2d at 988-90.

Rogers essentially asserts in his federal petition that his conviction for first degree

murder is unlawful because the evidence at trial was insufficient to prove premeditation or

felony murder. Rogers has not demonstrated a violation of any clearly established federal

law. The clearly established federal law which applies to a claim of insufficient evidence is *Jackson v. Virginia*, 443 U.S. 307 (1979). According to *Jackson*, in order to obtain habeas corpus relief, a petitioner must establish that upon the evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found proof beyond a reasonable doubt. Rogers does not make this showing.

There was sufficient evidence to support a finding of premeditation. "Premeditation is defined as more than a mere intent to kill; it is a fully formed conscious purpose to kill. This purpose may be formed a moment before the act but must exist for a sufficient length of time to permit reflection as the nature of the act to be committed and the probable result of that act." *Norton v. State*, 709 So. 2d 87, 92 (Fla. 1997) (citations omitted). Whether or not the evidence shows a premeditated design to commit a murder is a question of fact for the jury which may be established by circumstantial evidence, *Sochor v. State*, 619 So.2d 285 (Fla. 1993), and the jury is not required "to believe the defendant's version of the facts when the State has produced conflicting evidence." *Spencer v. State*, 645 So. 2d 377, 380-381 (Fla. 1994), *cert. denied*, 522 U.S. 884 (1997). The circumstances which support a finding of premeditation may include the nature of the weapon, the presence or absence of provocation, previous difficulties between the parties, the manner in which the homicide was committed, the nature and manner of the wounds, and the accused's actions before and after the homicide. *Holton v. State*, 573 So.2d 284, 289 (Fla. 1990)(citing *Larry v. State*, 104 So. 2d 352, 354 (Fla. 1958)). A murderous intent may be established by facts and circumstances of the case such as a weapon being directed at some vital spot on the victim's body. *Edwards*

14

*v. State*, 302 So. 2d 479 (Fla. 3d DCA 1974). In addition, a jury may infer premeditation from a defendant's actions after the crime. *Dupree v. State*, 615 So.2d 713, 715 (Fla. 1st DCA 1993). Finally, while motive is not an essential element of homicide, where proof of a crime resets on circumstantial evidence, motive may be considered and may become important. *Norton*, 709 So. 2d at 92.

Here, the evidence which supports a finding of premeditation includes the nature and manner of the victim's wounds. The victim sustained an eight and one-half inch deep fatal stab wound to her chest which was made by a "long stabbing instrument" which was inserted into the victim's chest, twisted then pulled out of the wound (Respondent's Ex. A16 at pg. 1915). The victim sustained a second fatal stab wound to her right buttock which was nine and one-half inches deep, and was nearly identical to the wound she sustained in her chest (Id. at pgs. 1919-20). The victim also appeared to have a defensive stab wound on her arm (Id. at pg. 1907). The nature of the wounds supports the conclusion that the victim was deliberately stabbed to effectuate her death. Viewing the evidence in the light most favorable to the prosecution, a rational jury could have found proof beyond a reasonable doubt that the murder was premeditated.

Likewise, there was sufficient evidence to support a finding of felony murder. In addition to convicting Rogers of first-degree murder, the jury returned a guilty verdict on the charges of robbery with a deadly weapon, and grand theft motor vehicle. Rogers does not appear to challenge the sufficiency of the evidence to support his independent felony convictions for robbery with a deadly weapon and grand theft motor vehicle. Therefore, the

State's alternate felony murder theory, premised on the underlying felonies, must be deemed valid in light of the Rogers' contemporaneous, unchallenged convictions for robbery with a deadly weapon and grand theft motor vehicle. *See Morrison v. State*, 818 So. 2d 432, 452 (Fla. 2002).

Furthermore, there was evidence that Rogers was without a motor vehicle, and was soliciting others at the bar for a ride. (Respondent's Ex. A-11 at pgs. 1177, 1179). The victim left the bar with Rogers in the victim's car. There was testimony that the victim gave Rogers a ride so that Rogers could "get some money." (Respondent's Ex. A-11 at pg. 1121). The next morning, Rogers was seen leaving the hotel alone in the victim's car. (Respondent's Ex. A-12 at pgs. 1245-46). When Rogers was apprehended in Kentucky, he was driving the victim's car (Respondent's Ex. A-12 at pg. 1328). There was testimony that the victim never loaned her car to anybody (Respondent's Ex. A-11 at pg. 1118). The victim's wallet was found in a trash can at a rest stop off the interstate (Respondent's Ex. A-12 at pg. 1407). Lab tests revealed that two of Rogers' fingerprints were on a receipt found inside the victim's wallet. (Respondent's Ex. A-14 at pgs. 1679-82). There was also testimony that the victim always wore a sapphire and diamond square ring, a sapphire with teardrop and diamond ring, a Mother's Day ring, and a heart-shaped watch (Respondent's Ex. A-11 at pgs. 1108-09). Those items were never recovered from the crime scene, and the victim's mother, who was responsible for taking care of the victim's affairs following her death, never found the rings or the watch (Respondent's Ex. A-11 at pg. 1119).

In the present case, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found proof beyond a reasonable doubt that Rogers killed the victim in order to take her property. *See Finney v. State*, 660 So. 2d 674, 680 (Fla. 1995) ("On this record, there is no reasonable hypothesis other than that Finney killed Ms. Sutherland in order to take her property. Ms. Sutherland's VCR was pawned by Finney within hours of the murder; her mother testified that her jewelry box was missing; and there also was testimony that Ms. Sutherland's bedroom was ransacked and the contents of her purse was dumped on the floor.").

The Florida Supreme Court's denial of this claim was neither contrary to, nor unreasonable application of, clearly established federal law, as determined by the Supreme Court within the meaning of 28 U.S.C. § 2254(d). Accordingly, Ground One does not warrant habeas corpus relief.

**Ground Two**

"The trial judge erred by denying the defense motion to disqualify the Hillsborough County State Attorney's Office after the prosecutors seized attorney/client privileged documents from Rogers' cell, a month prior to trial. The Error violated Petitioner's rights under the fourth, fifth, sixth, eighth, and fourteenth amendment to the United States Constitution and the corresponding provision of the Florida Constitution." (Dkt. 1 at pg. 5).

In Ground Two, Rogers complains that his constitutional rights were violated when the state trial court denied his motion to disqualify the Hillsborough County State Attorney's Office after investigators from its office raided his prison cell, without a warrant or court order, and confiscated documents that included legal documents from Rogers' defense

17

counsel.  Rogers raised this claim on direct appeal.  In denying this claim, the Florida

Supreme Court stated:

> We next address Rogers' claim that the trial court erred by denying the defense's motion to disqualify the Hillsborough County State Attorney's Office after investigators with the State Attorney's Office were instructed by prosecutors to conduct a warrantless search of Rogers' jail cell a week before trial, during which they seized documents including Rogers' personal papers related to this case. As a result of the warrantless search and seizure, defense counsel filed a motion to suppress the evidence seized from Rogers' cell and to disqualify the Hillsborough County State Attorney's Office from prosecuting Rogers.

> Prior to trial, the trial court conducted a formal evidentiary hearing on the matter. Rogers' counsel told the court that the boxes seized by authorities contained work product of the attorney-client relationship. Rogers' attorney alleged that the search was illegal because it was not a "shake-down" search by jail personnel for security purposes. Rather, Rogers' attorney argued that Rogers had a minimal Fourth Amendment right as a pretrial detainee and that the search was done strictly for investigative purposes of confiscating incriminating evidence to be used against Rogers at trial. Rogers claimed that the search and seizure violated his Fourth Amendment expectation of privacy, his Sixth Amendment right to counsel, and his Fifth Amendment right to access to courts and protection against deprivation of property without due process of law. Rogers' attorney argued that the seized documents had, at that time, been in the possession of the State for a week and that the State could not "put the horse back in the barn once you let him out."

> According to the State, investigators were not seeking information to incriminate Rogers in the pending prosecution involving Cribbs' murder. Rather, prosecutors were investigating Rogers and other inmates' involvement in a conspiracy to blame the murder on another prisoner. The State advised that none of the seized items had been viewed by anyone in the State Attorney's Office.

> During the hearing, Assistant State Attorney Karen Cox stated that she did not think that a warrant was necessary because Rogers did not have a reasonable expectation of privacy in jail and because Rogers was a high-security prisoner subject to a jail shakedown once a day on a random basis, relying on *Hudson v. Palmer*, 468 U.S. 517, 82 L. Ed. 2d 393, 104 S. Court. 3194 (1984), and

*State v. Bolin*, 693 So. 2d 583 (Fla. 2d DCA 1997). At the conclusion of the evidentiary hearing, the trial court found that Rogers had not shown prejudice because "all the documents are being returned. . . . I am finding at this time that none of those documents have been reviewed by any member of the State Attorney's Office or any other law enforcement agency and they are going to be returned to Mr. Rogers." The trial court further ordered that "none of those documents or any fruits from those documents will be used at this trial." The trial court denied the "Motion for Disqualification of the State Attorney's Office based upon the findings of the court that there has been no disclosure of attorney/client privilege in this case and there will be no disclosure of attorney/client privilege in this case."

In order to prevail on a motion to disqualify all members of the State Attorney's Office from prosecuting a case, "the defendant must point to some prejudice to him which results from the office's participation in the prosecution." *State v. Clausell*, 474 So. 2d 1189, 1190 (Fla. 1985). "Although we have stated that the appearance of impropriety created by certain situations may demand disqualification, we have evaluated such situations on a case-by-case basis." *Bogle v. State*, 655 So. 2d 1103, 1106 (Fla. 1995). For instance, in *Reaves v. State*, 574 So. 2d 105, 107-08 (Fla. 1991), the Court determined that the appearance of impropriety mandated that the defendant be given a new trial because the prosecutor in the case had previously represented the defendant in another matter and had access to privileged information. Likewise, in *Castro v. State*, 597 So. 2d 259, 260-61 (Fla. 1992), the Court held that personal assistance to the prosecution by a defendant's prior counsel created a sufficient appearance of impropriety to warrant a new penalty hearing for the defendant, even though there was no evidence demonstrating that the attorney actually disclosed confidential information.

In this case, Rogers has failed to establish the requisite prejudice, and therefore we do not find that disqualification of the State Attorney's Office was required. Nevertheless, the conduct of the prosecutors of the Hillsborough County State Attorney's Office who ordered investigators of that office to engage in a search of Rogers' cell and seize his personal papers was clearly improper.

We emphasize that neither the United States Supreme Court's opinion in Hudson, nor the Second District's opinion in Bolin would have authorized such a search. *See Hudson*, 468 U.S. at 519; *Bolin*, 693 So. 2d at 584-85. In Hudson, an officer with a state correctional center conducted a "shakedown" search of a prisoner's locker and cell solely for the purpose of finding contraband. 468 U.S. at 519. In Bolin, prison officers entered Bolin's cell for

the purpose of investigating an attempted suicide by Bolin. *See id.* at 585. The Second District emphasized that the officer "did not come to the cell simply to find evidence that would bolster its case." *Id.*

In contrast to Hudson and Bolin, in this case, it was an investigator with the State Attorney's Office who conducted the search and seized the documents in order to investigate an alleged conspiracy to pin the blame for the victim's murder on another person. Thus, the search was directly related to the case being prosecuted. As in *McCoy v. State*, 639 So. 2d 163, 166-67 (Fla. 1st DCA 1994), there was no "legitimate" need to search Rogers' jail cell for institutional security and the search was directly related to the case being prosecuted. Similar to McCoy, it was the prosecutors assigned to Rogers' case who directed investigators to perform a search of Rogers' cell, which included a search for any writings by Rogers that would be incriminating. See *id. at 164.*

The prosecutors' actions are of grave concern to this Court, carrying with them the potential to undermine the essential fairness of our system of justice based on an adversarial system with established procedures for gathering evidence and searching for the truth. Just as the prosecutors in this case could not have interrogated the defendant in his prison cell outside the presence of his attorney, so were the prosecutors or their representatives precluded from invading the defendant's cell without a warrant and seizing his personal papers and effects for purposes of gathering evidence. We emphasize this is not a case where the search was justified by prison security concerns and where the prison officials themselves deemed it necessary to search Rogers' cell. Cf. *Hudson, 468 U.S. at 519; Bolin, 693 So. 2d at 584-85.*

Nevertheless, as a result of the actions taken by the trial court to ensure that the papers seized were not used by the prosecution, we conclude that the interests of justice would not be served by reversal for a new trial on this basis. As the trial court found: (1) neither the prosecution nor the police involved in the case examined any of the seized documents retrieved from Rogers' cell; (2) all of the documents were returned to Rogers; and (3) the State did not use any of the seized evidence in the prosecution of Rogers. Accordingly, Rogers has not pointed to specific prejudice that resulted from the State Attorney's participation in the prosecution. See *Clausell, 474 So. 2d at 1190*. Although we do not condone the prosecutors' actions, as in *Farina v. State, 680 So. 2d 392, 395-96 (Fla. 1996)*, we find that the trial court did not abuse its discretion in declining to disqualify the Hillsborough County State Attorney's Office.

*Rogers v. State*, 783 So. 2d at 990-92.

Rogers has not demonstrated that the cell search and seizure of documents prejudiced him. The state court's unrebutted factual findings, which this Court must presume are correct, 28 U.S.C. § 2254(e)(1), demonstrate that nobody from the State Attorney's Office examined the seized documents. Furthermore, Rogers neither alleges nor demonstrates that the State used confidential information obtained from the documents to obtain an advantage at trial, or that any evidence was obtained from the seized documents and introduced at trial. Therefore, even if the state court's denial of Rogers' motion to disqualify the Hillsborough County State Attorney's Office was a violation of Rogers' constitutional rights, Rogers is not entitled to relief because he fails to show any "actual prejudice" as a result of the violation. See *Brecht*, 507 U.S. at 637. See also *Weatherford v. Bursey*, 429 U.S. 545, 558 (1977) ("There being no tainted evidence in this case, no communication of defense strategy to the prosecution, and no purposeful intrusion by Weatherford, there was no violation of the Sixth Amendment insofar as it is applicable to the States by virtue of the Fourteenth Amendment.").

The Florida Supreme Court's denial of this claim was neither contrary to, nor unreasonable application of, clearly established federal law, as determined by the Supreme Court within the meaning of 28 U.S.C. § 2254(d). Accordingly, Ground Two will be denied.

**Ground Three**

"The trial court erred by denying defense counsel's motions to have a PET scan performed on Rogers before the commencement of trial." (Dkt. 1 at pg. 6).

In Ground Three, Rogers complains that twice before trial he moved the trial court to order a PET[5] scan performed on him. The trial court denied both motions. Rogers argues that as a result, his two mental health experts were unable to determine the extent of his brain damage or determine his brain functioning, and therefore the experts were unable to demonstrate the extent of his brain damage and brain functioning to the jury. Rogers raised this claim on direct appeal. The Florida Supreme Court denied the claim as follows:

> We next turn to Rogers' contention that the trial court erred by denying his motion to have a PET-Scan performed on Rogers' brain. A PET-Scan is a diagnostic test that may assist in determining whether a person's brain is functioning properly. Prior to trial, the defense filed a Motion for Testing at Public Expense seeking a PET-Scan of Rogers' brain. In support of the motion for PET-Scan, Dr. Berland, Ph.D., a forensic psychologist, provided an affidavit to the trial court in which he stated:
>
> > A PET scan would appear to be a valuable element of a comprehensive evaluation of this defendant's brain and mental functioning, and an important tool in presenting the picture of his impairment to the jury. Particularly in a case where a victim has died and the jury must consider whether an accused defendant should live or die, the stakes are high and the evidence to be presented to the jury must be of the highest quality. It is my opinion that a PET scan would serve a valuable corroborating and explanatory function in presenting an account of this defendant's behavior to the jury. The PET scan measures the different levels of brain activity (i.e. levels of metabolic activity) in different brain locations in a series of slices through the brain comparable to those obtained in COURT scan. Many forms of injury to the brain tissue both traumatic and otherwise, do not affect the structural integrity of the brain tissue. Rather, the shape of the brain tissue remains unchanged, but the ability to function properly is altered by the injury. The anticipated

_____

[5]Positron Emission Tomography.

results of a PET scan would provide visual corroboration of the physiological, medical underpinnings of this defendant's impairment and related emotional problems for an understandably skeptical lay jury. This test would also avoid having the defense ask the jury in a case of this magnitude to rely solely on a form of testing which indicates brain injury (i.e. the Wechsler Adult Intelligence Scale) which depends on voluntary responses by the defendant and whose outcome could be argued (incorrectly) to be subject to manipulation by the defendant. No argument could be made that the defendant manipulated the outcome of this medical examination. Although the Wechsler is associated with over four decades of research verifying its utility as a measure of impairment from brain injury, a medical test to supplement and elaborate on the Wechsler results would add a significant impetus to a jury presentation. Given the nature of this defendant's history of incidents involving potential brain injury, and the test results suggesting impairment from brain injury, it is reasonably anticipated that the results of the PET scan would be significant and useful.

(Emphasis supplied.)

FN5 The State argues that it would be inappropriate for this Court to find that the trial court abused its discretion in denying Rogers' request for a PET-Scan because, according to the State, there is authority suggesting that PET-Scan evidence fails to satisfy the requirements set forth in *Frye v. United States*, 54 App. D.C. 46, 293 F. 1013 (D.C. Cir. 1923), for determining the admissibility of scientific evidence. The scientific reliability of PET-Scan evidence was never at issue in the trial court. Moreover, contrary to the State's assertions, the United States Court of Appeals for the Eighth Circuit has determined that "[t]here is also no question that the PET scan is scientifically reliable for measuring brain function." *Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968, 973 (8th Cir. 1995).

Doctor Maher, a forensic psychiatrist, also submitted a letter to the court, which stated only: "Upon consideration of my preliminary evaluation of Glen Rogers it is evident that a PET-Scan of the brain will be necessary to complete this evaluation." Thereafter, the trial court denied the motion, stating:

I'm fully aware of the security risks [of transporting Rogers to Jacksonville] and the concerns regarding the costs [of the PET-Scan]. My concern is that if there is a potential mitigator here in this case that the Defense should certainly be given the opportunity to show that it exists, and I think that the Defense can do that through the expert testimony that they have available to them already.

In a subsequent proceeding, the defense moved to have Rogers undergo a magnetic resonance imaging ("MRI") test. Despite the State's concerns that Rogers was a security risk, the trial court granted the motion but limited costs to $ 1500. After the results of the MRI, which found no evidence of brain damage, the defense renewed its motion for a PET-Scan. The defense argued that the negative MRI test results further necessitated a PET-Scan because the jury likely would have been misled by the normal MRI results as to the extent of Rogers' brain damage.

During the second motion hearing, Dr. Berland indicated that Rogers' medical records from Mercy Hospital revealed that during his 1991 hospitalization for a skull fracture, Rogers was on Dilantin, an anti-seizure medication. According to Dr. Berland, a PET-Scan was the only way to verify Rogers' diagnosed seizure disorder, which Dr. Berland believed to be a mitigating circumstance. However, in denying the motion, the trial court stated: "Seizure disorder can be shown if you think that's a nonstatutory mitigator. That might be necessary at some point. It can be shown through the previous hospital records. Apparently somebody diagnosed him. So it's denied."

A trial court's decision to deny a defendant's motion for a PET-Scan will not be disturbed absent an abuse of discretion. Cf. *San Martin v. State*, 705 So. 2d 1337, 1347 (Fla. 1997) (finding that a trial court's refusal to provide funds for the appointment of experts for an indigent defendant will not be disturbed absent an abuse of discretion); see also *Robinson v. State*, 761 So. 2d 269, 275-76 (Fla. 1999), *cert. denied*, 529 U.S. 1057, 120 S. Court. 1563, 146 L. Ed. 2d 466 (2000); *Hoskins v. State*, 702 So. 2d 202, 209 (Fla. 1997). In evaluating whether the trial court abused its discretion, this Court generally looks at two factors. See *San Martin*, 705 So. 2d at 1347. First, before the trial court will provide a defendant with the necessary funds for a PET-Scan, the defendant must establish a particularized need for the test, that is, that the test is necessary for experts to make a more definitive determination as to whether the defendant's brain is functioning properly and to provide their opinions about the extent of the defendant's brain damage. Cf. *San Martin*, 705 So. 2d

at 1347; see also *Robinson*, 761 So. 2d at 275; *Hoskins*, 702 So. 2d at 209. Second, this Court must consider whether the defendant was prejudiced by the trial court's denial of the motion requesting a PET-Scan. Cf. *San Martin*, 705 So. 2d at 1347; see also *Robinson*, 761 So. 2d at 275-76; *Hoskins*, 702 So. 2d at 210.

Although Hoskins did not establish a bright-line rule for determining whether a PET-Scan is warranted in a given case, we emphasize that a particularized showing of necessity is the polestar for whether any diagnostic test should be authorized by the trial court. In Robinson, this Court found that the trial court did not abuse its discretion in denying the defendant a Single Photon Emission Computed Tomography ("SPECT") scan because "neither doctor testified that the SPECT scan test was necessary to complete their medical opinion; they merely stated that the exam would have been helpful." 761 So. 2d at 275-76. In Robinson, both medical experts testified that the defendant suffered from apparent brain damage in the left temporal lobe. The Court noted that one of the doctors "requested the exam merely to confirm his conclusions. However, the defense did not mention what those conclusions were." 761 So. 2d at 276 n.7. In finding that the trial court did not err in denying the defendant's motion for a SPECT scan, the Court concluded that the results of the SPECT scan would only have "confirmed the doctors' already established opinions, which were substantially accepted by the trial court." 761 So. 2d at 276. In contrast to Robinson, the expert in Hoskins not only recommended that the PET-Scan be performed, but also provided the trial court with specific reasons as to why the PET-Scan was necessary in that case. See *Hoskins*, 702 So. 2d at 208-09.

In this case, we conclude that the trial court did not abuse its discretion in denying Rogers' request for the PET-Scan. Although Dr. Berland stated that the PET-Scan would have value as corroboration, he did not testify that the PET-Scan was necessary to complete his medical opinion regarding Rogers' brain damage. Doctor Maher submitted a letter informing the trial court that the PET-Scan was necessary; however, the letter stated in full that "[u]pon consideration of my preliminary evaluation of Glen Rogers it is evident that a Pet scan of the brain will be necessary to complete this evaluation." In contrast to the expert in Hoskins, Dr. Maher's conclusory letter failed to establish a particularized showing of need for the PET-Scan. See *Hoskins*, 702 So. 2d at 208-09; *Robinson*, 761 So. 2d at 275-76.

Even if we found that the PET-Scan should have been authorized, we would not find that the second prong of prejudice has been established. See *San Martin* 705 So. 2d at 1337. Both Drs. Maher and Berland testified about

Rogers' brain damage and overall mental health, including Rogers' brain injuries, psychotic disturbances, porphyria, and the fact that Rogers previously had been prescribed the anti-seizure medication Dilantin. Significantly, the defense also introduced Rogers' Mercy Hospital medical records that referred to the diagnosis of Rogers' intracranial hemorrhage in 1991 and contained evidence of Rogers' seizure disorder.

Furthermore, in contrast to Hoskins, the trial court in the instant case found a statutory mitigating circumstance pertaining to Rogers' mental condition. The trial court also considered the defendant's deprived childhood and alcohol and drug abuse, among other things, in finding nonstatutory mitigation. Therefore, because the defense was able to provide substantial evidence of Rogers' mental health by means other than a PET-Scan, including his prior brain injuries, psychological disturbances, and seizure disorder, and because the trial court found mitigating circumstances related to his mental condition, including a statutory mitigating circumstance, we do not find that Rogers was prejudiced by the denial of the PET-Scan.

*Rogers v. State*, 783 So. 2d at 997-1000.

The Court concludes that the Florida Supreme Court's determination of this claim was not contrary to nor an unreasonable application of United States Supreme Court law. Rogers argues that the denial of this claim was contrary to *Ake v. Oklahoma*, 470 U.S. 68 (1985), *Lockett v. Ohio*, 438 U.S. 586 (1978), and *Gregg v. Georgia*, 428 U.S. 153 (1976). *Ake* held that the Constitution requires courts to provide access for indigent defendants to a psychiatric evaluation at the state's expense when sanity is a defense. *Ake*, 470 U.S. at 85. "*Lockett* held that 'the sentencer . . . [must] not be precluded from considering *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.'" *Westbrook v. Zant*, 704 F.2d 1487, 1493 n.6 (11th Cir. 983) (quoting *Lockett*, 438 U.S. at 604) (emphasis in original). The principal opinion in *Gregg* established that in capital cases, "it is constitutionally required

that the sentencing authority have information sufficient to enable it to consider the character and individual circumstances of a defendant prior to imposition of a death sentence." *Gregg*, 428 U.S. at 189-190 n. 38 (citation omitted).

Rogers' reliance on *Ake*, *Lockett*, and *Gregg* is unpersuasive. This Court must decide whether the Florida Supreme Court's adjudication of this claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "The threshold question under AEDPA is whether [Rogers] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). In none of the decisions cited by Rogers did the Supreme Court hold that an indigent defendant must be furnished neurological testing at state expense in addition to the assistance of a psychiatrist. To this Court's knowledge, the Supreme Court has never concluded that a defendant is entitled to diagnostic testing essential to the psychiatrist's evaluation. See *Vickers v. Arizona*, 497 U.S. 1033 (1990) (Marshall, J., dissenting) ("I would grant the petition to decide whether the Constitution requires a State to provide an indigent defendant access to diagnostic testing necessary to prepare an effective defense based on his mental condition, when the defendant demonstrates that his sanity at the time of the offense will be a significant issue at trial.").

Even if there is a clearly established rule requiring a state to provide necessary diagnostic testing at state expense, this Court cannot conclude that the Florida Supreme Court's decision on this issue was an unreasonable application of this rule. Rogers was

appointed a psychiatrist and a psychologist at state expense. The mental health experts conducted extensive testing of Rogers. (See Respondent's Ex. A-33 at pgs. 16-23). Rogers' request for an MRI of his brain was granted and paid for by the State. (See Respondent's Ex. A-2 at pgs. 216-217). Dr. Berland testified that the psychological testing he performed on Rogers would show brain injury "in a primitive way" and in his opinion a PET scan would "more specifically and more accurately...portray brain damage." (See Respondent's Ex. A-3 at pgs. 9-10). During the penalty phase, Dr. Berland testified that his psychological testing of Rogers and review of Rogers' medical records revealed that Rogers had sustained multiple brain injuries that affected Rogers' thinking, perception, and judgment. (See Respondent's Ex. A-22 at pg. 2695). This Court has reviewed the transcripts from the two state court hearing's on this issue. After hearing testimony and argument regarding the need for a PET scan, the trial court determined that "the Defense can [show brain injury] through the expert testimony that they have available to them already" (see Respondent's Ex. A-4 at pgs. 12-13), and that "seizure disorder...can be shown through the previous hospital records." (Id. at pg. 122). Based on the testimony presented, it was reasonable for the trial court to conclude that a PET scan was not necessary to effectively present Rogers' mitigating evidence regarding brain injury.

Rogers has not met his burden of demonstrating that the Florida Supreme Court's denial of this claim was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court within the meaning of 28 U.S.C. § 2254(d). Therefore, Ground Three will be denied.

**Ground Four**

"The trial court erred by allowing witnesses from California to testify, during the penalty phase, about the details of a misdemeanor of which Rogers was convicted, because it was not a prior violent felony and thus did not support the "PRIOR VIOLENT FELONY' aggravator. The error violated Petitioner's rights under the fifth, sixth, eighth, and fourteenth amendment to the United States Constitution and the corresponding provision of the Florida Constitution." (Dkt. 1 at pg. 8).

Rogers complains that his constitutional rights were violated when the trial court allowed two witnesses on behalf of the State to testify during the penalty phase of the trial regarding the details of Rogers' prior aggravated assault conviction from California. Rogers argues that the California judgment of conviction showed that both counts were misdemeanors rather than felonies. Therefore, he argues, the conviction was not a prior violent felony, and did not support the "prior violent felony" aggravator.

Respondent asserts that this claim was not fairly presented as a federal constitutional claim in state court and thus is procedurally barred from federal habeas review (Dkt. 18 at pg. 64). The Court agrees. In his initial brief on appeal, Rogers raised this claim as trial court error. (Respondent's Ex. A-33 at pgs. 54-61). He did not, however, cite any Supreme Court law or other federal cases addressing his claims and relied solely on state cases.

Rogers did not fairly present his federal claim in state court, and it is therefore, procedurally barred from federal habeas review. In *McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005), the Eleventh Circuit stated:

> McNair never cited any United States Supreme Court or federal appellate court case dealing with extraneous evidence, nor did he mention the presumption of prejudice that arises under federal law when jurors consider such evidence.

Instead, he relied on state law opinions to argue a state law claim under a state law standard, citing a lone federal district court opinion (which itself did not mention the federal presumption of prejudice) only as part of a string citation illustrating various courts' holdings with respect to extraneous evidence in the jury room. A careful review of the record makes it clear that McNair did not fairly present his federal constitutional claim to the state court. He therefore failed to exhaust his state court remedies and is procedurally barred from raising his non-exhausted federal claim in his federal habeas petition.

*McNair*, 416 F.3d at 1304.

Because Rogers is barred by state procedural rules from exhausting the substance of his federal claim, procedural default exists for purposes of federal habeas review. See *Coleman v. Thompson*, 501 U.S. 722 (1991). Moreover, Rogers has not shown cause and prejudice or a fundamental miscarriage of justice in order to excuse his default. *See Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). Furthermore, Rogers is now precluded under state law from presenting the federal issue on appeal. An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 839-40 (1999). Accordingly, Ground Four will be denied as procedurally barred.

Regardless, even if the claim were not procedurally barred, the claim has no merit. This claim is a state evidentiary issue that is not cognizable in a federal habeas proceeding. Claims asserting a violation of state law, including state evidentiary error, are not cognizable in a federal habeas petition. *Daniels v. Lafler*, 192 Fed. Appx. 408, 419 (6th Cir. 2006) (citing *Stuart v. Wilson*, 442 F.3d 506, 513 n.3 (6th Cir. 2006)). "[E]videntiary errors must

deny a criminal defendant fundamental fairness in order to be cognizable in a habeas proceeding." *Williams v. Kemp*, 846 F.2d 1276, 1282 (11th Cir. 1988). The Eleventh Circuit has stated:

> We review state court evidentiary rulings on a petition for habeas corpus to determine only whether the error, if any, was of such magnitude as to deny petitioner his right to a fair trial. Erroneously admitted evidence deprives a defendant of fundamental fairness only if it was a crucial, critical, highly significant factor in the [defendant's] conviction.

*Jacobs v. Singletary*, 952 F.2d 1282, 1296 (11th Cir. 1992) (internal quotation marks and citations omitted). "Rarely will an evidentiary ruling render a trial fundamentally unfair and correspondingly federal habeas corpus relief is rarely deemed appropriate for claims predicated on allegations of state evidentiary error." *Nebel v. Sec'y, Dep't of Corr.*, 2006 U.S. Dist. LEXIS 15151 at *8 (M.D. Fla. 2006)(citing *Boykins v. Wainwright*, 737 F.2d 1539, 1543-44 (11th Cir. 1984), *cert. denied*, 470 U.S. 1059 (1985)).

The record establishes that the state trial judge instructed the jury to disregard the testimony of the two witnesses who testified regarding Rogers' prior misdemeanor conviction (Respondent's Ex. A-23 at pg. 2816). "A jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)). Further, the trial court specifically found that the aggravating circumstance that Rogers was previously convicted of a felony involving the use of violence to some person was not established beyond a reasonable doubt (Respondent's Ex. A-23 at pgs. 2932-33). Finally, there were other aggravating circumstances that were proven beyond a reasonable doubt (Id. at pgs. 2929-33). Thus, this Court cannot conclude that even if the

evidence regarding the prior misdemeanor conviction was erroneously admitted, it was a significant factor in his death sentence. Accordingly, Rogers has failed to demonstrate that the Florida Supreme Court's denial of this claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

**Ground Five**

"The prosecutor made outrageous and improper arguments in penalty phase closing, in addition to other prosecutorial misconduct. The error violated Petitioner's rights under the fifth, sixth, eighth, and fourteenth amendment to the United States Constitution and the corresponding provision of the Florida Constitution." (Dkt. 1 at pg. 10).

In Ground Five of his petition, Rogers asserts: "Prosecutors committed prosecutorial misconduct pre-trial, (the jail search); in the guilt phase closing, (improper bolstering of state witnesses) and in the penalty phase closing arguments." (Dkt. 1 at pg. 10). In his memorandum of law, Rogers essentially asserts that the state trial court granted his motion in limine prohibiting any comment regarding the prosecutor's opinion about the death penalty, the social status of the victim, and facts not in evidence. Rogers then complains that the prosecutor made comments regarding all those matters. Finally, he asserts that "[t]his denigration of the mitigation of Rogers' alcoholism and deprived childhood is contrary to the holding in <u>Eddings v. Oklahoma</u>, 455 U.S. 104, 102 S.Ct. 869 (1982)." (Dkt. 13 at pgs. 15-16). In his reply, Rogers clarifies that the "point of his claim" is that "[t]he denigration of

the mitigation of Mr. Rogers' alcoholism and deprived childhood was contrary to *Eddings*."

(Dkt. 21 at pg. 8).

Initially, Respondent argues that this claim is procedurally barred from review because the Florida Supreme Court denied the claim because it was not preserved for appellate review since defense counsel did not object to the prosecutor's allegedly improper arguments during closing argument. (See Dkt. 18 at pg. 74). In denying the claim, the Florida Supreme Court stated:

> In the next point, Rogers argues that the trial court committed reversible error by failing to grant a mistrial based on allegedly improper prosecutorial comments during the State's penalty phase closing argument. This Court has repeatedly held that allegedly improper prosecutorial remarks cannot be raised on appeal unless a contemporaneous objection is lodged. See *McDonald v. State*, 743 So. 2d 501, 505 (Fla. 1999); *Kilgore v. State*, 688 So. 2d 895, 898 (Fla. 1996); *Gibson v. State*, 351 So. 2d 948, 950 (Fla. 1977). The exception to this procedural bar is where the prosecutor's erroneous comments constitute fundamental error, which has been defined as the type of error that "reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." *Urbin v. State*, 714 So. 2d 411, 418 n.8 (Fla. 1998) (quoting *Kilgore*, 688 So. 2d at 898).
>
> Because Rogers never objected during the State's penalty phase closing argument, we must consider whether the comments, taken individually and collectively, rise to the level of fundamental error. *See McDonald*, 743 So. 2d at 505. We find that most of the arguments complained of do not constitute error, much less fundamental error.
>
> Virtually the same argument that we condemned in *Ruiz v. State*, 743 So. 2d 1, 5 (Fla. 1999), regarding "Operation Desert Storm," was repeated by the prosecutor. However, our decision in Ruiz was issued subsequent to the closing argument in this case and defense counsel did not lodge a contemporaneous objection. We do not find this single unobjected-to argument to constitute fundamental error, see *Kilgore*, 688 So. 2d at 898, nor does it warrant a mistrial. See *Cole*, 701 So. 2d at 853.

*Rogers v. State*, 783 So. 2d at 1002 (footnote omitted).

In *Doorbal v. Dep't of Corr.*, 572 F.3d 1222 (11th Cir. 2009), the Eleventh Circuit

Court of Appeals stated:

> It is well established that federal courts will not review questions of federal
> law presented in a habeas petition when the state court's decision rests upon a
> state-law ground that 'is independent of the federal question and adequate to
> support the judgment.'" *Cone v. Bell*, 129 S. Court. 1769, 1780, 173 L. Ed. 2d
> 701 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S. Court.
> 2546, 2553, 115 L. Ed. 2d 640 (1991)). The Supreme Court has "held that
> when a petitioner fails to raise his federal claims in compliance with relevant
> state procedural rules, the state court's refusal to adjudicate the claim ordinarily
> qualifies as an independent and adequate state ground for denying federal
> review." *Id*. The adequacy of the procedural bar is not a matter of state law, but
> "is itself a federal question." *Id*. (internal quotation marks omitted).

> We apply a three-part test to determine whether the state decision rested upon
> an "independent and adequate" ground under state law:

>> First, the last state court rendering a judgment in the case must
>> clearly and expressly state that it is relying on state procedural
>> rules to resolve the federal claim without reaching the merits of
>> that claim. Secondly, the state court's decision must rest solidly
>> on state law grounds, and may not be "intertwined with an
>> interpretation of federal law." Finally, the state procedural rule
>> must be adequate; i.e., it must not be applied in an arbitrary or
>> unprecedented fashion [or be manifestly unfair].

> *Judd*, 250 F.3d at 1313 (quoting *Card v. Dugger*, 911 F.2d 1494 (11th Cir.
> 1990)).

*Doorbal*, 572 F.3d at 1227. Florida has a rule that precludes appellate review of improper

prosecutorial remarks unless a contemporaneous objection is lodged at trial, unless the

prosecutor's comments constitute fundamental error. *McDonald v. State*, 743 So. 2d 501,

505 (Fla. 1999). When a state court decision was based on the contemporaneous objection

rule, considerations of comity require that this Court refrain from considering the constitutional claim on the merits. *McKinon v. Wainwright*, 705 F.2d 419, 421 (11th Cir. 1983) (citing *Wainwright v. Sykes*, 433 U.S. 72 (1977)).

In Rogers' appeal, the Florida Supreme Court concluded that the prosecutor's comments did not constitute fundamental error. Therefore, the Florida Supreme Court applied Florida's contemporaneous objection rule and found Rogers' claim regarding improper prosecutorial comments procedurally barred. *Rogers v. State*, 783 So. 2d at 1002. Rogers has not demonstrated cause for the default and actual prejudice, nor has he demonstrated that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749. Therefore, the Court finds that Ground Five of the petition, Rogers' improper prosecutorial comments claim, has been procedurally defaulted and is not subject to review by this Court.

Even if the claim were not procedurally barred, it would fail on the merits. The issue before this Court is whether Petitioner's federal constitutional rights were violated. Improper prosecutorial remarks amount to a constitutional violation only if the remarks render the proceedings fundamentally unfair. *Cargill v. Turpin*, 120 F.3d 1366, 1379 (11th Cir. 1997). The relevant inquiry is whether the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974). "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. at

642). In making this assessment, a reviewing court must evaluate the allegedly improper comments in the context of both the prosecutor's entire closing argument and the trial as a whole.[6] *Branch v. Estelle*, 631 F.2d 1229, 1233 (5th Cir. 1980).[7]

Taken in the context of the entire trial, and in light of the evidence of Rogers' guilt, the prosecutor's comments, even if improper, were not so egregious as to render the trial fundamentally unfair, nor did they infect the trial with such unfairness that the resulting conviction amounts to a denial of due process. See *Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986) (en banc), *cert. denied,* 480 U.S. 911 (1987) ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair.").

Rogers fails to meet his burden of demonstrating that the Florida Supreme Court unreasonably applied controlling Supreme Court precedent or that his federal constitutional rights were violated. Accordingly, Ground Five fails on the merits.

**Ground Six**

"The trial court erred by denying a defense motion for a new trial because of newly discovered evidence, when a new defense witness came forward after trial. The error violated Petitioner's rights under the fifth, sixth, eighth, and fourteenth amendment to the United States Constitution and the corresponding provision of the Florida Constitution." (Dkt. 1 at pg. 11).

---

[6]Federal law on closing argument is the same as Florida law. To determine whether a prosecutor's remarks are harmful, "the comments must be analyzed within the context of the closing argument as a whole and considered cumulatively within the context of the entire record." *Rivera v. State*, 840 So.2d 284, 287 (Fla. 5th DCA 2003) (citing *Brooks v. State*, 762 So.2d 879 (Fla. 2000); *Cochran v. State*, 711 So.2d 1159 (Fla. 4th DCA 1998)).

[7]Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

In Ground Six, Rogers complains his constitutional rights were violated when the trial court denied his motion for a new trial after a witness, Thomas Amobrose, came forward after Rogers was found guilty, and provided testimony which indicated that someone else committed the homicide.

Rogers raised this claim on direct appeal.  In denying the claim, the Florida Supreme Court stated:

> We finally address the denial of Rogers' motion for new trial based on newly discovered evidence. After the jury verdict of guilt, Rogers made a motion claiming that there was newly discovered evidence establishing his innocence. Thomas Ambrose, a homeless person who came forward during the penalty phase of the trial, claimed that he was with Rogers on the evening of November 5, 1995. According to Ambrose, while waiting for Rogers in the parking lot of the motel, he observed a female and a Mexican male enter Rogers' motel room. Ambrose claims that he and Rogers then spent several hours drinking at another motel, following which he accompanied Rogers back to the motel room where Rogers discovered that the victim was dead. Ambrose claimed that when Rogers asked what he should do, he told Rogers to just get in the car and leave.
>
> The trial court conducted an evidentiary hearing and found that Ambrose's testimony qualified as newly discovered evidence.  However, the trial court denied Rogers' motion for a new trial, concluding that Ambrose's testimony would not have produced an acquittal on retrial. On appeal, Rogers claims that newly discovered evidence entitles him to a new trial and that the trial court erred in denying him relief. We disagree.
>
> In order to provide relief on the ground of newly discovered evidence, the asserted facts must have been: (1) unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known them by the use of diligence; and (2) the newly discovered evidence must be of such a nature that it would probably produce an acquittal on retrial. See *Melendez v. State*, 718 So. 2d 746, 747 (Fla. 1998); *Blanco v. State*, 702 So. 2d 1250, 1251 (Fla. 1997); *Jones v. State*, 591 So. 2d

911, 915 (Fla. 1991). In reviewing the trial court's application of the newly
discovered evidence rule, this Court applies the following standard of review:

> As long as the trial court's finding are supported by competent
> substantial evidence, "this Court will not substitute its own
> judgment for that of the trial court on question of fact, likewise
> of the credibility of the witnesses as well as the weight to be
> given to the evidence by the trial court."

*Melendez*, 718 So. 2d at 747-48 (quoting *Blanco*, 702 So. 2d 1250 at 1251).

In this case, the trial court found, among other things, that: (1) Ambrose is an
alcohol and drug user who admitted to drinking on the night in question; (2)
Ambrose provided authorities with no information surrounding the murder that
could not have been gained from reading the newspaper or watching television
news reports; and (3) Ambrose's testimony was inconsistent, incredible,
unbelievable, and did not agree with the physical evidence in the case. The
record in this case thus shows that the trial court properly applied the law, and
the trial court's findings are supported by competent substantial evidence.
Consequently, this Court is precluded from substituting its own judgment for
that of the trial court on this matter. See *Blanco*, 702 So. 2d at 1252. We find
no error.

*Rogers v. State*, 783 So. 2d at 1003-1004.

Rogers has failed to demonstrate that the Florida Supreme Court's rejection of this

claim was either contrary to, or an unreasonable application of, clearly established federal

law. Rogers fails to cite, nor has this Court found, any established Supreme Court law that

the state court's ruling violated. He cites to *Chambers v. Mississippi*, 410 U.S. 284 (1973)

and *Washington v. Texas*, 388 U.S. 14 (1967) for the proposition that the right to call

witnesses in one's own behalf is essential to due process (See Dkt. 13 at pg. 17). Rogers

does not, however, assert that he was denied the right to call any witness during his trial.

Instead, he asserts that he was denied due process when the trial court denied his motion for

a new trial based on allegedly newly discovered evidence, i.e., the testimony of Thomas Ambrose.

In Florida, in order to provide relief on the ground of newly discovered evidence, the asserted facts must have been: (1) unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known them by the use of diligence; and (2) the newly discovered evidence must be of such a nature that it would probably produce an acquittal on retrial. See *Melendez v. State*, 718 So. 2d 746, 747 (Fla. 1998). Following an evidentiary hearing, the trial court determined that Thomas Ambrose's testimony was, *inter alia*, "inconsistent," "incredible," and "totally unworthy of belief." (Respondent's Ex. A-25 at pg. 238-39). The trial court concluded that Ambrose's proposed testimony would "not have produced a different result in this case or at a retrial..." (Respondent's Ex. A-25 at 238). A federal court must defer to the state court's findings of fact.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). This deference to credibility determinations is well established. *Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over [the petitioner's]."), *cert. denied*, 526 U.S. 1047 (1999); *Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness

credibility are, however, entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."), *cert. denied*, 513 U.S. 1161 (1995). Rogers presents no basis for rejecting the trial court's credibility determination. Consequently, Rogers fails to meet his burden of rebutting the presumption of correctness by clear and convincing evidence.

The Supreme Court has never "questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability-even if the defendant would prefer to see that evidence admitted." *Crane v. Ky.,* 476 U.S. 683, 690 (1986)(citing *Chambers*, 410 U.S. at 302). Further, a federal court's inquiry into state evidentiary rulings is limited to violation of a federally guaranteed right, *Nordskog v. Wainwright*, 546 F.2d 69, 72 (5th Cir. 1977), such as the denial of fundamental fairness, *Hall v. Wainwright*, 733 F.2d 766, 770 (11th Cir. 1984), and the category of infractions that violates fundamental fairness is narrow. *Estelle v. McGuire,* 502 U.S. 62, 73 (1991). In light of the state courts' determination that Ambrose's testimony was wholly unreliable and incredible, and that his testimony would probably not have produced a different result at trial, Rogers cannot show that the denial of his motion for a new trial resulted in the denial of fundamental fairness.

Rogers has not demonstrated that the Florida courts' disposition of this claim was contrary to, or constituted an unreasonable application of, governing precedent of the Supreme Court of the United States. Accordingly, Ground Six will be denied.

**Ground Seven**

"The trial court erred by instructing the jury on, and finding, the two statutory aggravators: that (1) the homicide was committed during a robbery or for pecuniary gain; and (2) the homicide was heinous, atrocious or cruel. The error violated Petitioner's rights under the fifth, sixth, eighth, and fourteenth amendment to the United States Constitution and the corresponding provision of the Florida Constitution." (Dkt. 1 at pg. 12).

In Ground Seven, Rogers essentially argues that his federal constitutional rights were violated when the trial court found and instructed the jury on two statutory aggravators: 1) the homicide was committed during a robbery or for pecuniary gain; and 2) the homicide was heinous, atrocious or cruel. He asserts that there is no evidence that the homicide was both conscienceless or pitiless and unnecessarily torturous. He also asserts that the trial court's finding that the homicide was committed during a robbery or for pecuniary gain was based on an unwarranted inference that Rogers was guilty of robbery because he was in possession of the victim's car when he was apprehended.

In denying this claim, the Florida Supreme Court found:

Rogers maintains that the evidence was insufficient to support the aggravating circumstances that the murder was heinous, atrocious, or cruel and that the murder was committed for pecuniary gain. Aggravators must be proven beyond a reasonable doubt. See *Geralds v. State*, 601 So. 2d 1157, 1163 (Fla. 1992). In reviewing a trial court's finding that an aggravating circumstance is applicable, it is not this Court's function to reweigh the evidence to determine whether the State proved each aggravating circumstance beyond a reasonable doubt--that is the trial court's job. See *Willacy v. State*, 696 So. 2d 693, 695-96 (Fla. 1997). Rather, this Court's task is to review the record to determine whether the trial court applied the right rule of law for each aggravating circumstance and, if so, whether competent substantial evidence supports its finding. See id.

      1. Pecuniary Gain

In order to establish the aggravating factor of pecuniary gain, the State must prove beyond a reasonable doubt that the murder was motivated, at least in part, by a desire to obtain money, property, or other financial gain. See *Finney v. State*, 660 So. 2d 674, 680 (Fla. 1995); *Clark v. State*, 609 So. 2d 513, 515 (Fla. 1992); *Peek v. State*, 395 So. 2d 492, 499 (Fla. 1980). The pecuniary gain aggravator is also applicable where the defendant's motivation for murder was to "improv[e his] financial worth." *Allen v. State*, 662 So. 2d 323, 330 (Fla. 1995); see *Scull v. State*, 533 So. 2d 1137, 1142 (Fla. 1988); *Peek*, 395 So. 2d at 499. This Court has consistently found the pecuniary gain aggravating circumstance applicable in cases where the murder was committed during the forcible taking of an automobile. See *Wyatt v. State*, 641 So. 2d 355, 359 (Fla. 1994); see also *Lambrix v. State*, 494 So. 2d 1143, 1148 (Fla. 1998) (finding murder committed for pecuniary gain where defendant killed the victim and proceeded to steal victim's car).

However, where a defendant kills a victim, steals the victim's car, and abandons the vehicle shortly after the murder, this Court has found that the State could not show that the defendant committed the murder for pecuniary gain. See *Allen*, 662 So. 2d at 330; *Scull*, 533 So. 2d at 1142; *Peek*, 395 So. 2d at 499. Rather, under such circumstances, this Court has determined that the defendants likely stole the vehicles to facilitate their escapes from the murder scenes. See *Allen*, 662 So. 2d at 330; *Scull*, 533 So. 2d at 1142; *Peek*, 395 So. 2d at 499.

As previously discussed in connection with the evidence supporting the robbery, we find that the same facts and circumstances that support robbery also support the trial court's finding that Rogers killed Cribbs for pecuniary or financial gain. See *Finney*, 660 So. 2d at 684. Specifically, Rogers' primary motive for the murder appears to have been to obtain Cribbs' property and, in particular, her vehicle, money and other personal effects.

Furthermore, we reject Rogers' argument that he stole Cribbs' vehicle simply to facilitate his escape. Unlike the defendants in Allen, Scull, and Peek, Rogers never abandoned Cribbs' vehicle. Rather, the evidence showed that he was living in Cribbs' vehicle a week after the homicide. At the time of Rogers' arrest in Kentucky, authorities discovered a cooler full of food, a comforter, pillows, a duffel bag, and a suitcase inside the vehicle, which Rogers was still driving. Also, unlike the defendants in Allen, Scull, and Peek, Rogers did not flee from the crime scene immediately after killing Cribbs. The evidence showed that Rogers likely killed Cribbs on Sunday evening. However, he did not leave the motel until approximately 9 a.m. Monday morning. Also, upon

his capture in Kentucky, Rogers informed authorities that after taking Cribbs' vehicle, he never intended to return the vehicle. Thus, the defense's theory that Rogers stole the victim's vehicle simply to facilitate his escape is inconsistent with the evidence. Therefore, we affirm the trial court's ruling finding the pecuniary gain aggravating circumstance applicable.

2. HAC

Rogers also contends that the trial court erred in finding the HAC aggravating circumstance applicable in this case. In order for the HAC aggravating circumstance to apply, the murder must be conscienceless or pitiless and unnecessarily tortuous to the victim. See *Hartley v. State*, 686 So. 2d 1316, 1323 (Fla. 1996). A finding of HAC is appropriate only when a murder evinces extreme and outrageous depravity as exemplified either by the desire to inflict a high degree of pain or utter indifference to or enjoyment of the suffering of another. See *Cheshire v. State*, 568 So. 2d 908, 912 (Fla. 1990). This Court has consistently upheld the HAC aggravator in cases where: (1) the victim suffered multiple stab wounds, none of which caused instantaneous death, and proceeded to bleed to death; and (2) the wounds were inflicted while the victim was conscious and were intended to inflict a high degree of pain or where the defendant showed utter indifference to or enjoyment of the suffering of another. See *Jimenez*, 703 So. 2d at 441; *Finney*, 660 So. 2d at 685; *Henry v. State*, 649 So. 2d 1366, 1369 (Fla. 1994); *Suggs v. State*, 644 So. 2d 64, 70 (Fla. 1994); *Floyd v. State*, 569 So. 2d 1225, 1232 (Fla. 1990). In addition, this Court has found the HAC aggravator applicable in cases where a defendant had killed a victim by "deliberately twisting the knife blade during the stabbing." *Merck v. State*, 664 So. 2d 939, 942 (Fla. 1995); see *Lusk v. State*, 446 So. 2d 1038, 1043 (Fla. 1984) (finding HAC where victim suffered three stab wounds in the back).

In the present case, the trial judge found:

> Tina Marie Cribbs died as a result of two fatal stab wounds inflicted while she was conscious. One stab wound was in the buttock and the knife was driven in with such great force that the wound path was nine and one-half inches deep. While in her body, the knife was twisted ninety degrees before being pulled from its path. Tina Marie Cribbs was alive and conscious during the infliction of this fatal wound. The other stab wound was to her chest and was driven in with such force that the wound path was eight and one-half inches deep. While in her body, the knife

was twisted ninety degrees before being pulled from its path. Tina Marie Cribbs was alive and conscious during the infliction of this fatal wound.

At some point during the attack on Cribbs, she struggled for her life, evidenced by blunt impact injuries to her torso and a laceration to her left wrist indicative of a defensive wound. All this took place in the small confines of a motel bathroom with little if any chance of escape, where Cribbs would have been face to face with her killer and his weapon of choice, a knife with a blade at least nine and one-half inches long.

Cribbs was conscious at the least long enough to realize her lifeblood was flowing down the bathtub drain and that she could not escape death.

We find that competent substantial evidence supports the trial court's finding that the HAC aggravator was applicable in this case and we affirm on this issue.

*Rogers v. State*, 783 So. 2d at 992-94.

The Florida Supreme Court's determination must be given deference under 28 U.S.C. § 2254(e). Given the evidence in this case that Rogers took the victim's car and appeared to be living in it a week after the homicide, and took the victim's wallet and jewelry, this Court cannot conclude that the state courts' determination that the murder was committed for pecuniary gain was clearly erroneous. Furthermore, given the evidence that Rogers stabbed the victim twice, the stab wounds were eight and nine inches deep, Rogers twisted the knife while it was inside the victim, the victim did not die immediately, and she tried to struggle and defend herself, this Court also cannot conclude that the state courts' determination that the homicide was heinous, atrocious, and cruel was clearly erroneous.

In *Lewis v. Jeffers*, 497 U.S. 764, 776 (1990), the Supreme Court stated that "in determining whether a state court's application of its constitutionally adequate aggravating circumstance was so erroneous as to raise an independent due process or Eighth Amendment violation, we think the more appropriate standard of review is the 'rational factfinder' standard established in *Jackson v. Virginia*, 443 U.S. 307 (1979)." The inquiry set forth in *Jackson* concerns "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319 (citation omitted). Applying the *Jackson* standard, and giving due deference to the state courts' unrebutted findings of fact, see 28 U.S.C. § 2254(e), the Court determines that a rational factfinder could have found that the killing was heinous, atrocious, or cruel, and was committed for pecuniary gain.

Rogers has not demonstrated that the Florida courts' disposition of this claim was contrary to, or constituted an unreasonable application of, governing precedent of the Supreme Court of the United States. Accordingly, Ground Seven will be denied.

**Ground Eight**

"The trial court erred by (1) failing to find the "MENTAL AND EMOTIONAL DISTRESS" mitigator. And (2) failing to give both mental mitigators great or significant weight. The error violated Petitioner's rights under the fifth, sixth, eighth, and fourteenth amendment to the United States constitution and the corresponding provision of the Florida Constitution. (Dkt. 1 at pg. 14).

In Ground Eight, Rogers complains that his constitutional rights were violated when the trial court failed to find that the homicide was committed while he was under the influence of extreme mental or emotional disturbance. He argues that the totality of Dr. Maher and Dr. Berland's testimony clearly established that he was under extreme mental and emotional disturbance at the time of the homicide. He further argues that his constitutional rights were violated when the trial court failed to give either great or significant weight to the statutory mitigating circumstances that the homicide was committed while he was under the influence of extreme mental or emotional disturbance, and that the capacity of the defendant to appreciate the criminality of his [or her] conduct or to conform his [or her] conduct to the requirements of law was substantially impaired.

Rogers raised these claims on direct appeal. In denying the claims, the Florida Supreme Court stated:

> The defense additionally claims that the trial court erred in failing to find that the "capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance." § 921.141(6)(b), Fla. Stat. (1995). In conjunction with this claim, the defense also asserts that the trial court erred in only giving "some weight" to the statutory mitigating circumstance that the "capacity of the defendant to appreciate the criminality of his [or her] conduct or to conform his [or her] conduct to the requirements of law was substantially impaired." § 921.141(6)(f), Fla. Stat. (1995). Furthermore, Rogers argues that the trial court failed to consider and appropriately weigh all of the mitigating evidence presented at trial as required by *Campbell v. State*, 571 So. 2d 415, 419 (Fla. 1990).
>
> A mitigating circumstance is broadly defined as "any aspect of a defendant's character or record and any of the circumstances of the offense" that reasonably may serve as a basis for imposing a sentence less than death. *Id*. at 419 n.4. When addressing mitigating circumstances, the sentencing court must expressly evaluate in its written order each mitigating circumstance proposed

by the defendant to determine whether it is supported by the evidence and whether, in the case of nonstatutory factors, it is truly of a mitigating nature. See *id*. at 419. "As with statutory mitigating circumstances, proposed nonstatutory circumstances should generally be dealt with as categories of related conduct rather than as individual acts." *Id*. at 419 n.3; see *Reaves v. State*, 639 So. 2d 1, 5 (Fla. 1994) (finding no error where trial court reasonably grouped several nonstatutory mitigating factors into three). After finding mitigating circumstances, the court must expressly consider in its written order each established mitigating circumstance and then must weigh the aggravating circumstances against the mitigating circumstance, in order to facilitate appellate review. See *Campbell*, 571 So. 2d at 420.

The standards of review of a trial court's finding of mitigating circumstances are as follows: (1) whether a particular circumstance is truly mitigating in nature is a question of law and subject to de novo review by this Court; (2) whether a mitigating circumstance has been established by the evidence in a given case is a question of fact and subject to the competent substantial evidence standard; and (3) the weight assigned to a mitigating circumstance is within the trial court's discretion and subject to the abuse of discretion standard. See 571 So. 2d at 419-20; see also *James v. State*, 695 So. 2d 1229, 1237 (Fla. 1997) (finding that so long as the trial court considers all of the evidence, the trial court's subsequent determination of a lack of mitigating evidence will stand "absent a palpable abuse of discretion").

During the penalty phase of the trial, the defense presented testimony from Drs. Robert Berland and Michael Maher, who testified regarding Rogers' mental health. Doctor Berland concluded that Rogers suffered from brain damage, mental illness, and a rare genetic mental disease called porphyria, which impacts the central nervous system and can cause psychosis and strokes. According to Dr. Berland, Rogers had all three symptoms of a psychotic disturbances: hallucinations, delusions, and mood disturbances. Psychological testing indicated that Rogers also suffered from schizophrenia, mania and paranoia. Doctor Berland opined that Rogers' mental illness had a great impact on Rogers' thinking, perception, and behavior.

Similarly, Dr. Maher testified about Rogers' family and medical history, including Rogers' porphyria, alcohol abuse, mental health, and emotional and psychological problems. According to Dr. Maher, porphyria, which is precipitated by alcohol consumption, can cause significant lapses in memory where a person becomes confused, frustrated, and often upset. Doctor Maher also indicated that Rogers had a significant history of trauma to the head.

Doctor Maher stated that significant head injuries, porphyria, and alcohol abuse all can contribute to violent behavior. Doctor Maher opined that given Rogers' mental and physical history he had "no serious doubt that [Rogers'] capacity to appreciate the criminality of his conduct with regard specifically to violence toward other people would have been impaired." Finally, Dr. Maher concluded that Rogers' ability to conform his conduct to the requirements of the law would have been substantially impaired.

Although both Drs. Berland and Maher testified at length regarding Rogers' mental health, neither of them stated that Rogers killed Cribbs while he was under the influence of extreme mental or emotional disturbance. In fact, during the discussion regarding the penalty phase jury instructions, the trial judge stated that she heard no testimony on the extreme mental or emotional disturbance mitigator. Thereafter, defense counsel did not object when the judge struck the emotional or mental disturbance mitigator instruction.

Although the trial court did not find that Rogers committed the murder while Rogers was under the influence of extreme mental or emotional disturbance, see § 921.141(6)(b), Fla. Stat., the court did give the standard jury instruction for the mitigating circumstance that Rogers' ability to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. See § 921.141(6)(f), Fla. Stat. In sentencing the defendant, the trial court made the following findings pertaining to mitigation:

> 1. The capacity of the Defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.
>
> The defense presented testimony of two mental health experts that the Defendant suffers from a psychosis, has suffered brain damage at some point in his life and has a physiological disease called porphyria. The Defendant is a chronic alcohol abuser, and the long-term alcohol abuse coupled with the untreated psychosis, probable brain damage and porphyria which may be exacerbated by alcohol may have substantially impaired the Defendant's capacity to conform his conduct to the requirements of law. The Court gives this statutory mitigating factor some weight.

(Emphasis supplied.)

Additionally, the trial court considered Rogers' character, record or background and circumstances of the offense:

> a. The Defendant had a childhood deprived of love, affection or moral guidance. The testimony established that the Defendant's father was an alcoholic who physically abused the Defendant's mother in the presence of the Defendant and his siblings. The evidence further established that the Defendant was introduced to controlled substances at a young age by an older brother and that the same older brother encouraged the Defendant to participate in numerous burglaries as a child. This Court gives this lack of moral upbringing of good family values slight weight.

> b. The Defendant has at various times in his adult life been lawfully and gainfully employed or self-employed. A former employer testified that the Defendant was a reliable and well-liked cab driver. The Court gives this mitigating factor slight weight.

> c. The Defendant at one time in his adult life was solely responsible for the care of his two children. The Court gives this mitigating factor slight weight.

> 3. Any other circumstances of the offense.

> The Defendant had been drinking alcohol beverages (beer) for some hours on the day he came into contact with the victim and had generously purchased at least one round of drinks for the victim and her friends. There is no indication that this was done with any motive other than generosity. The Court gives this little weight.

(Emphasis supplied.)

In summary, the trial court considered all of the relevant testimony from both the lay and expert witnesses who testified during the penalty proceeding. The court concluded that Rogers' history of mental illness, alcohol and drug abuse, childhood abuse, and poor family upbringing, among other evidence, supported the finding of one statutory and several nonstatutory mitigating circumstances. The trial court did not characterize Rogers' mitigating evidence

in "broad generalizations" as the trial court erroneously did in *Crump v. State*, 654 So. 2d 545, 547 (Fla. 1995), a case relied upon by Rogers. Rather, the trial judge made specific findings with regards to mitigation, identifying each mitigating circumstance presented by the defense. In addition to finding and weighing mitigating evidence, as required by Campbell, the trial judge dealt with the nonstatutory mitigators "as categories of related conduct rather than as individual acts." *Campbell*, 571 So. 2d at 419 n.3.  As stated in Campbell, the weight given to each mitigating factor rests within the discretion of the trial court. See 571 So. 2d at 420. Although the trial judge did not give significant weight to the mitigating evidence, the sentencing order clearly reflects that the trial court considered the evidence and weighed it accordingly. In light of these findings, we cannot conclude that the trial court abused its discretion in the weight given to the mitigating evidence. We find that the trial court properly abided by the procedures discussed in Campbell. See 571 So. 2d at 419-20.

*Rogers v. State*, 783 So. 2d at 994-97.

Initially, to the extent Rogers argues his constitutional rights were violated when the trial court failed to give the mitigating circumstances either great or substantial weight, the claim has no merit.  "[W]hile sentencing courts may not refuse to consider evidence offered in mitigation, they need not decide that the facts established by that evidence have mitigating force in the context of the case. The Constitution requires that the sentencer be allowed to consider and give effect to evidence offered in mitigation, but it does not dictate the effect that must be given once the evidence is considered; it does not require the sentencer to conclude that a particular fact is mitigating or to give it any particular weight." *Schwab v. Crosby*, 451 F.3d 1308, 1329 (11th Cir. 2006).

To the extent Rogers complains that his constitutional rights were violated when the trial court failed to find the statutory mitigator that the homicide was committed while he was under the influence of extreme mental or emotional disturbance, the claim is also without

merit. "Trial court's findings on mitigating factors are presumed to be correct, see, e.g., *Magwood v. Smith*, 791 F.2d 1438, 1450 (11th Cir.1986), and will be upheld if they are supported by the record. See, e.g., 28 U.S.C. § 2254(d)." *Atkins v. Singletary*, 965 F.2d 952, 962 (11th Cir. 1992). "Acceptance of nonstatutory mitigating factors is not constitutionally required; the Constitution only requires that the sentencer consider the factors." *Atkins*, 965 F.2d at 962)(citing *Blystone v. Pennsylvania*, 494 U.S. 299, 308 (1990)). Rogers fails to allege or show that the trial court failed to consider the mitigation evidence. The Constitution does not require the sentencer to give effect to all mitigation presented. There is no constitutional violation if the defendant is allowed to present all relevant mitigating evidence, and the jury is given the opportunity to consider it and give it effect. *Penry v. Lynaugh*, 492 U.S. 302, 328 (1989).

Furthermore, the trial court specifically found that the medical experts did not opine that Rogers committed the homicide while he was under the influence of extreme mental or emotional disturbance (Respondent's Ex. A-22 at pg. 2795).[8] The Florida Supreme Court found that "[a]lthough both Drs. Berland and Maher testified at length regarding Rogers' mental health, neither of them stated that Rogers killed Cribbs while he was under the influence of extreme mental or emotional disturbance." *Rogers v. State*, 783 So. 2d at 996. Rogers has not established by clear and convincing evidence that the state courts' determination was clearly erroneous.

---

[8]The trial court did find that the medical expert testimony did establish the statutory mitigating circumstance that the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. (Respondent's Ex. A-3 at pg. 491).

Rogers has not demonstrated that the Florida courts' disposition of this claim was contrary to, or constituted an unreasonable application of, governing precedent of the Supreme Court of the United States. Accordingly, Ground Eight will be denied.

**Ground Nine**

"The trial court erred by failing to consider and appropriately weigh all mitigators shown by the evidence, in accordance with <u>Campbell</u>. The error violated Petitioner's rights under the fifth, sixth, eighth, and fourteenth amendment to the United States Constitution and the corresponding provision of the Florida Constitution." (Dkt. 1 at pg. 15).

In Ground Nine, Rogers complains that his federal constitutional rights were violated when the state trial court failed to consider and appropriately weigh all of the mitigating evidence presented at trial. Initially, the Court agrees with Respondent that Rogers' claim that the state trial court's failure to consider and appropriately weigh all of the mitigation violated his federal constitutional rights is unexhausted and procedurally barred. To satisfy the exhaustion requirement, a petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). Rogers did not raise a federal constitutional issue in state court regarding this claim. (See Respondent's Ex. A-33 at pgs. 94-96). Therefore, the federal constitutional dimension of this claim has been waived and is procedurally barred here. *Sullivan v. Wainwright*, 695 F.2d 1306 (11th Cir. 1983). Even if state law bears some relation to federal constitutional requirements, *Luton v. Grandison*, 44 F.3d 626, 628 (8th Cir. 1994), *cert. denied*, 513 U.S. 1195 (1995), the presentation of the claim in state law terms is insufficient to support a finding that the state courts have had a fair opportunity to address

the constitutional claim. *Duncan*, 513 U.S. 364. Rogers has not presented cause to excuse his default or established his actual innocence, and therefore he is procedurally barred from raising this claim here.

Regardless, Rogers' claim is without merit. In denying Rogers' claim that the trial court failed to consider and appropriately weigh all of the mitigating evidence, the Florida Supreme Court concluded that:

> In summary, the trial court considered all of the relevant testimony from both the lay and expert witnesses who testified during the penalty proceeding. The court concluded that Rogers' history of mental illness, alcohol and drug abuse, childhood abuse, and poor family upbringing, among other evidence, supported the finding of one statutory and several nonstatutory mitigating circumstances. The trial court did not characterize Rogers' mitigating evidence in "broad generalizations" as the trial court erroneously did in *Crump v. State*, 654 So. 2d 545, 547 (Fla. 1995), a case relied upon by Rogers. Rather, the trial judge made specific findings with regards to mitigation, identifying each mitigating circumstance presented by the defense. In addition to finding and weighing mitigating evidence, as required by Campbell, the trial judge dealt with the nonstatutory mitigators "as categories of related conduct rather than as individual acts." *Campbell*, 571 So. 2d at 419 n.3. HN12As stated in Campbell, the weight given to each mitigating factor rests within the discretion of the trial court. See 571 So. 2d at 420. Although the trial judge did not give significant weight to the mitigating evidence, the sentencing order clearly reflects that the trial court considered the evidence and weighed it accordingly. In light of these findings, we cannot conclude that the trial court abused its discretion in the weight given to the mitigating evidence. We find that the trial court properly abided by the procedures discussed in Campbell. See 571 So. 2d at 419-20.

*Rogers v. State*, 783 So. 2d at 997.

"[T]he Eighth and Fourteenth Amendments require that the sentencer in a capital case consider any evidence which mitigates against the imposition of the death penalty." *Glock v. Moore*, 195 F.3d 625, 637 (11th Cir. 1999) (citing *Lockett v. Ohio*, 438 U.S. 586, 608

(1978)). A sentencer may not "refuse to consider, *as a matter of law*, any relevant mitigating evidence." *Eddings v. Okla.*, 455 U.S. 104, 115 (1982)(emphasis in original). 'The sentencer…may determine the weight to be given relevant mitigating evidence. But [the sentencer] may not give it no weight by excluding such evidence from [his] consideration." *Id.* "[W]hile sentencing courts may not refuse to consider evidence offered in mitigation, they need not decide that the facts established by that evidence have mitigating force in the context of the case. The Constitution requires that the sentencer be allowed to consider and give effect to evidence offered in mitigation, but it does not dictate the effect that must be given once the evidence is considered; it does not require the sentencer to conclude that a particular fact is mitigating or to give it any particular weight." *Schwab*, 451 F.3d at 1329.

"Trial court's findings on mitigating factors are presumed to be correct, *see, e.g., Magwood v. Smith*, 791 F.2d 1438, 1450 (11th Cir.1986), and will be upheld if they are supported by the record. See, e.g., 28 U.S.C. § 2254(d)." *Atkins*, 965 F.2d at 962. "Acceptance of nonstatutory mitigating factors is not constitutionally required; the Constitution only requires that the sentencer consider the factors." *Atkins,* 965 F.2d at 962 (citing *Blystone v. Pennsylvania*, 494 U.S. at 308).

Rogers has not demonstrated by clear and convincing evidence that the Florida Supreme Court's finding that "the trial court considered all of the relevant testimony"[9] regarding mitigation was incorrect. *See Parker v. Head*, 244 F.3d 831, 835-36 (11th Cir. 2001); 28 U.S.C. § 2254(e)(1). Rogers has not demonstrated by clear and convincing

---

[9]See *Rogers v. State*, 783 So. 2d at 996-97.

evidence that the trial court refused to consider any relevant mitigating evidence.[10]  Thus,

Rogers has not demonstrated that the Florida Supreme Court's decision was contrary to, or

an unreasonable application of, clearly established federal law or an unreasonable

determination of the facts.  Accordingly, Ground Nine does not warrant federal habeas relief,

and therefore will be denied.

**Ground Ten**

"The trial court erred in sentencing Rogers to death because the death sentence was not
proportionally warranted.  The error violated Petitioner's rights under the fifth, sixth, eighth,
and fourteenth amendment to the United States Constitution and the corresponding provision
of the Florida Constitution."  (Dkt. 1 at pg. 16).

In Ground Ten, Rogers argues that his death sentence is disproportionate in the

circumstances of his case essentially because mitigating circumstances outweighed the

aggravating circumstances. Initially, the Court agrees with Respondent that this claim is

unexhausted and procedurally barred.  To satisfy the exhaustion requirement, a petitioner

must "fairly present" his claim in each appropriate state court, alerting that court to the

federal nature of the claim. *Duncan v. Henry*, 513 U.S. at 365-66.  Rogers did not raise a

federal constitutional issue in state court regarding this claim.  (See Respondent's Ex. A-33

at pgs. 96-99).  Rogers does not show cause and prejudice or that a fundamental miscarriage

---

[10]To the extent Rogers argues that pursuant to *Crump v. State*, 654 So. 2d 545 (Fla. 1995), the trial court
was required to discuss each mitigator in it its sentencing order, the claim is not cognizable in this federal habeas
proceeding because it concerns a matter of state law only. Federal habeas relief is available to correct only those
injuries resulting from a violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). A
state's interpretation of its own laws provides no basis for federal habeas relief since no question of a constitutional
nature is involved. *See Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983) (per curiam).  Furthermore,
the trial court addressed the proposed nonstatutory mitigating circumstances as "categories of related conduct" (see
Respondent's Ex. A-3 at pgs. 492-93) as contemplated in *Campbell v. State*, 571 So. 2d 415, 420 n.3 (Fla. 1990).

of justice will occur if the Court does not review the claim. Consequently, it is unexhausted and now procedurally barred.

In any event, even if the claim were exhausted, it fails on the merits. The federal constitution does not require proportionality review. *Pulley v. Harris*, 465 U.S. 37, 44 (1984). Where a state court undertakes proportionality review "in good faith" and concludes that the proportionality principle was not violated, the Constitution does not require the federal court "to look behind that conclusion." *Walton v. Arizona*, 497 U.S. 639, 656 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002). The Eleventh Circuit Court of Appeals has held:

> A federal habeas court should not undertake a review of the state supreme court's proportionality review and, in effect, "get out the record" to see if the state court's findings of fact, their conclusion based on a review of similar cases, was supported by the "evidence" in the similar cases. To do so would thrust the federal judiciary into the substantive policy making area of the state.

*Moore v. Balkcom*, 716 F.2d 1511, 1518 (11th Cir. 1983).

In denying Rogers' proportionality claim, the Florida Supreme Court found:

> Rogers next claims that the death penalty is disproportionate in this case. "The death penalty is reserved for 'the most aggravated and unmitigated of most serious crimes.'" *Clark v. State*, 609 So. 2d 513, 516 (Fla. 1992) (quoting *State v. Dixon*, 283 So. 2d 1, 7 (Fla. 1973)). This Court performs proportionality review to prevent the imposition of "unusual" punishments contrary to article I, section 17 of the Florida Constitution. *See Tillman v. State*, 591 So. 2d 167, 169 (Fla. 1991). In deciding whether death is a proportionate penalty, the Court must consider the totality of the circumstances of the case and compare the case with other capital cases. *See Urbin v. State*, 714 So. 2d 411, 416-17 (Fla. 1998). It is not a comparison between the number of aggravating and mitigating circumstances. *See Porter v. State*, 564 So. 2d 1060, 1064 (Fla. 1990). Therefore, this Court must determine whether the imposition of the death penalty in this case is proportionate when compared to similar crimes.

This case is similar to Merck, which also involved evidence that the defendant had deliberately twisted the knife blade during the stabbing of the victim. 664 So. 2d at 942-43. In Merck, the trial court found two aggravating circumstances: HAC and prior violent felony. See 664 So. 2d at 941. The court found no statutory mitigating circumstances but found two nonstatutory mitigating circumstances: the defendant had an abused childhood and had been drinking on the night of the murder. See id. Based on the circumstances of the stabbing, this Court held that the death penalty was proportionate. See 664 So. 2d at 943; see also *Pope v. State*, 679 So. 2d 710, 716 (Fla. 1996) (upholding death penalty where there was competent substantial evidence to support the premeditated murder for pecuniary gain despite two statutory mitigators-extreme mental or emotional disturbance and impaired capacity-and three nonstatutory mitigators-intoxication, violence occurring after a disagreement between boyfriend and girlfriend, and mental or emotional disturbance); *Orme v. State*, 677 So. 2d 258, 263 (Fla. 1996) (finding death penalty proportional where defendant beat and strangled victim in a motel room, trial court found three statutory aggravators-HAC, pecuniary gain, and sexual battery--and two statutory mental mitigators--substantial impairment and extreme emotional disturbance); *Geralds v. State*, 674 So. 2d 96, 105 (Fla. 1996) (affirming death sentence where murder was especially heinous, atrocious, or cruel and committed during the commission of a robbery and both statutory and nonstatutory mitigation was afforded little weight); *Breedlove v. State*, 413 So. 2d 1, 9-10 (Fla. 1982) (affirming death sentence where victim suffered single stab wound while asleep in bed, death was heinous, atrocious, or cruel, the murder was committed during the course of a burglary, and defendant had prior conviction of violent felony and little mitigation). We find that the circumstances in this case establish that Rogers' death sentence is proportional to other cases in which sentences of death have been upheld.

*Rogers v. State*, 783 So. 2d at 1002-1003.

Having reviewed the Florida Supreme Court's opinion, this Court finds nothing in the record to indicate a lack of good faith in the Florida Supreme Court's proportionality review. The Florida Supreme Court's determination that Rogers' death sentence was not disproportionate was neither contrary to, nor an unreasonable application of, federal law. Moreover, the decision did not rest upon an unreasonable determination of the facts. Under

§ 2254(d), federal habeas relief is not warranted for this claim. Accordingly, Ground Ten will be denied.

**Ground Eleven**

"Mr. Rogers was deprived of his right to reliable adversarial testing due to ineffective assistance of counsel at the guilt and penalty phases of his capital trial, in violation of Mr. Rogers' Fifth, Sixth, Eighth and Fourteenth Amendment rights under the United States Constitution and his corresponding rights under the Florida Constitution." (Dkt. 1 at pg. 18).

In Ground Eleven, Rogers asserts trial counsel was ineffective during the guilt phase of the trial in failing to: 1) present evidence of an alternative suspect, Jonathan Lundin (hereinafter "Lundin"); and 2) present the testimony of Robert Thompson (hereinafter "Thompson"). Rogers also asserts that prosecutorial misconduct during the guilt phase of the trial deprived him of a reliable adversarial testing.

Rogers raised this claim in his amended Rule 3.851 motion for postconviction relief (Respondent's Ex. B-1 at pgs. 41-61). Following evidentiary hearings, the state postconviction court denied the claim (Respondent's Ex. B-5 at pgs. 870-76). Rogers appealed. In affirming the denial of this claim, the Florida Supreme Court stated:

> This Court has held that for ineffective assistance of counsel claims to be successful, two requirements must be satisfied: "As to the first prong, deficient performance, a defendant must establish conduct on the part of counsel that is outside the broad range of competent performance under prevailing professional standards." *Gore v. State*, 846 So. 2d 461, 467 (Fla. 2003) (citations omitted). As to the second prong, prejudice, a defendant must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Morris v. State*, 931 So. 2d 821, 828 (Fla. 2006) (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Court. 2052, 80 L. Ed. 2d 674 (1984)).

Because both prongs of the *Strickland* test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court's factual findings that are supported by competent, substantial evidence, but reviewing the circuit court's legal conclusions de novo. *Morris*, 931 So. 2d at 828.

### (A) Failure to Develop an Alternative Suspect

In his first issue on appeal, Rogers asserts that the lower court erred in denying his claim that trial counsel was ineffective for failing to present evidence of an alternative suspect, Jonathan Lundin, and failing to present the testimony of Robert Thompson. In the alternative, Rogers argues that prosecutorial misconduct deprived him of a reliable adversarial testing. Each of these sub-claims will be addressed in turn.

### (I) Failure to Develop Joseph Lundin as an Alternative Suspect

Rogers first contends that the trial court erred in denying his claim that attorney Sinardi provided ineffective assistance by failing to develop and present evidence of an alternative suspect, Jonathan Lundin. We disagree.

Strategic decisions are not considered deficient performance when other courses have been weighed and the decision is reasonable under the circumstances. *See, e.g., Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000). Attorney Sinardi first learned of Lundin through an investigative report that detailed an interview with Mitchell Monteverdi, who was incarcerated with Rogers and Lundin during the period preceding Rogers' trial. He began by deposing Monteverdi to obtain sworn testimony of Lundin's alleged statement against interest--"the bitch had to answer to me." Counsel also searched Lundin's criminal record report, compared the autopsy reports of Cribbs and the victim of a murder by Lundin, and unsuccessfully attempted to locate witnesses who could identify Lundin as being in the vicinity of Rogers' motel room at the time of the murder. Attorney Sinardi ultimately decided, as a matter of trial strategy, that offering such evidence was not worth the risks to Rogers' case.

FN8 Monteverdi testified that he and Lundin were discussing Rogers' case in prison and Monteverdi believed the statement meant Lundin killed Cribbs.

FN9 Attorney Sinardi recalled that the depth and location of the wounds were similar, but the victim's body in Lundin's trial was too decomposed to allege any significant similarities.

Monteverdi's testimony would have been extremely risky to the defense. Not only would his credibility have been easily attacked, but the State could have impeached Monteverdi with his prior inconsistent statement acknowledging the existence of a jailhouse conspiracy to frame Lundin for Cribbs' murder. Furthermore, the State could have introduced evidence to prove the existence of the jailhouse conspiracy. Therefore, trial counsel was not deficient for failing to develop Lundin as an alternative suspect.

FN10 Monteverdi was serving a fifteen-year prison sentence for multiple forgeries, burglaries, and grand theft.

FN11 A confidential informant notified prosecutors of an alleged conspiracy, whereby Lundin, Rogers and several others would frame Lundin for the murder because Lundin believed he was going to get the death penalty for a different murder.

In addition, Rogers has failed to demonstrate prejudice that "so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined." *Davis v. State*, 928 So. 2d 1089, 1104-05 (Fla. 2005), *cert. denied*, 127 S. Court. 206, 166 L. Ed. 2d 166 (2006). First, Lundin was not a viable alternative suspect. Prosecutor Goudie testified at the evidentiary hearing that she was confident Lundin was not in Florida at the time of Cribbs' murder because she was the prosecutor on Lundin's murder case and was privy to information regarding his location at the time in question. Had Rogers attempted to offer Lundin as an alternative suspect, the prosecutor would have established that Lundin could not possibly have committed this murder. Second, as noted above, the State could have impeached Monteverdi on his testimony implicating Lundin by introducing his prior inconsistent statement and offered substantive evidence of the conspiracy to frame Lundin for Cribbs' murder. Third, the evidence against Rogers was overwhelming. The State had introduced a wealth of incriminating evidence against Rogers: Cribbs was last seen leaving a bar with Rogers; a motel clerk testified that, on the day after the murder, she saw Rogers pack suitcases into Cribbs' automobile, pay for an additional night and repeatedly demand that no one go into his room; Rogers made elaborate efforts to keep hotel staff from entering his room, including writing a "Do Not Disturb" sign on his door; Cribbs' wallet containing Rogers' fingerprints was found in a highway rest stop outside Tallahassee; and Rogers

was arrested in Kentucky while driving Cribbs' automobile, which contained the key to the motel room where Cribbs was found murdered. Even if none of the risks of presenting Lundin as an alternative suspect discussed above were present, trial counsel's rejection of this strategy would not undermine our confidence in the outcome.

### (ii) Failure to Present Robert Thompson as a Witness

Rogers next contends that his attorney provided ineffective assistance of counsel relating to the testimony of Thomas Ambrose by failing to call another witness, Robert Thompson. Ambrose was discovered during the penalty phase of the trial and testified that he saw Cribbs with another individual (not Rogers) on the evening of the murder. *See Rogers*, 783 So. 2d at 1003. Rogers moved for a new trial based on this newly discovered evidence. The trial court denied the motion because the testimony "would not have produced an acquittal on retrial." *Id*. On appeal, this Court affirmed, agreeing with the trial court that Ambrose's testimony "was inconsistent, incredible, unbelievable, and [contradicted] the physical evidence in the case." *Id*. at 1004.

In his amended rule 3.851 motion, Rogers argued that counsel was ineffective for failing to call Thompson because he would have testified that he saw Cribbs walking back toward the hotel with an older white male on the night of the murder. Rogers contended that if Thompson had been called to testify at trial, the similar account given by newly discovered witness Ambrose would have provided sufficient corroboration to create reasonable doubt and justify a new trial.

First, this assertion is simply unsupported by the record. According to trial counsel, Thompson would have testified that he saw Cribbs with an "older white male" on the night of the murder, whereas Ambrose testified that he saw Cribbs with a Mexican or Hispanic male. Thompson would not have corroborated Ambrose's testimony; rather, he likely would have contradicted it. Second, defense counsel stated that Thompson would have provided extremely damaging testimony that Rogers was the last man he saw Cribbs with that night, that Rogers told Thompson to call him Kentucky, that Rogers was acting suspicious, that Rogers was "fumbling" with Cribbs' car, and that Thompson was scared of Rogers in general. Counsel made a reasonable strategic decision not to call Thompson because his testimony could have seriously damaged Rogers' defense and, in fact, could have further implicated Rogers in the crime. Thus, counsel was not deficient for failing to call Thompson. *See Lamarca v. State*, 931 So. 2d 838, 849 (Fla. 2006) (denying

ineffective assistance claim for failing to call a witness when defense counsel believed that the testimony would have been incriminating to the defense); *Marquard v. State*, 850 So. 2d 417, 428 (Fla. 2002) (denying ineffective assistance claim for failing to call witnesses when defense counsel reasonably feared the witnesses would implicate the defendant in the crime). Accordingly, we affirm the trial court's denial of relief as to this sub-claim.

**(iii) Prosecutorial Misconduct**

Rogers next alleges that two instances of prosecutorial misconduct during the guilt phase deprived him of a reliable adversarial testing. The lower court determined that this claim was cognizable as a claim of ineffective assistance of counsel and then summarily denied it on the merits. However, Rogers failed to specifically plead any valid ineffective assistance claim in either the amended rule 3.851 motion or his initial brief on appeal to this Court; rather, he chose to substantively argue the issue as one of prosecutorial misconduct.

First, Rogers asserts that the State's warrantless search of the jail was improper. We have consistently held that "substantive claims of prosecutorial misconduct could and should [be] raised on direct appeal and are thus procedurally barred from consideration in a post-conviction motion." *Spencer v. State*, 842 So. 2d 52, 60 (Fla. 2003); *see also Lamarca*, 931 So. 2d at 851 n.8 (holding postconviction claims of prosecutorial misconduct procedurally barred because they could have been raised on direct appeal). Accordingly, we affirm the denial of this claim on grounds that it is procedurally barred.

Additionally, Rogers asserts that the prosecutor's actions in taking an unnoticed deposition of Monteverdi and threatening him with perjury dissuaded Monteverdi from testifying for the defense. As previously stated, Monteverdi's testimony would have seriously jeopardized the defense's case and counsel's failure to present him as a witness does not undermine our confidence in the outcome. Thus, any claim alleging that prejudice resulted in the failure of Monteverdi to testify because of prosecutorial misconduct is likewise without merit.

*Rogers v. State*, 957 So. 2d at 545-48.

With respect to Roger's claim that counsel was ineffective in failing to call Thompson as a witness, under Florida law, "the failure to call witnesses can constitute ineffective

assistance of counsel if the witness may have been able to cast doubt on the defendant's guilt, and the defendant states in his [post-conviction] motion the witnesses' names and the substance of their testimony, and explains how the omission prejudiced the outcome of the trial." *Marrow v. State*, 715 So.2d 1075 (Fla. 1st DCA 1998). "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) (citations omitted). Tactical decisions within the range of reasonable professional competence are not subject to collateral attack unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). The reasonableness of counsel's challenged conduct on the facts of the case viewed as of the time of counsel's conduct decides an ineffectiveness claim. *Strickland*, 466 U.S. at 690.

Initially, Rogers never presented Thompson as a witness during the evidentiary hearings on Rogers' Rule 3.851 motion (see Respondent's Ex. B-5 at pg. 872).

> "[E]jvidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted). Hence, the "petitioner must first make a sufficient factual showing, substantiating the proposed witness testimony." *Percival v. Marshall*, No. C-93-20068 RPA, 1996 WL 107279, at *3 (N.D. Cal. Mar. 7, 1996), affirmed, No. 96-15724, 1997 U.S. App. LEXIS 1097, 1997 WL 31219 (9th Cir. Jan. 23, 1997). "Such evidence might be sworn affidavits or depositions from the potential witnesses stating to what they would have testified." *Id.*

*Jordan v, McDonough*, 2008 U.S. Dist. LEXIS 831, at * 13-14 (M.D. Fla. 2008). Rogers has not presented evidence of actual testimony or any affidavit of alleged testimony from Thompson.[11] Accordingly, he has not made the requisite factual showing.

Furthermore, defense counsel's testimony at the evidentiary hearing clearly shows that he interviewed Thompson on more than one occasion to determine whether he should be called as a witness for the defense. Defense counsel concluded that he should not call Thompson as a witness because his testimony would have done more harm than good (Respondent's Ex. B-4 at pgs. 652-53). Defense counsel was concerned that the last person Thompson saw the victim with was Rogers. He also decided not to call Thompson as a witness because Thompson was unable to identify Jonathan Lundin as the man he saw the victim with at one point; Thompson saw Rogers acting in a suspicious manner around the victim's vehicle; and Thompson was afraid of Rogers (Id. at pgs. 651-55).

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable..." *Strickland*, 466 U.S. at 690-91. Rogers fails to demonstrate that counsel's performance was outside the bounds of reasonable professional judgment. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (internal citation omitted) ("[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision"); *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001) (counsel cannot be deemed incompetent

---

[11]Rogers has presented two police investigation reports that set forth statements made by Thompson to the police (See Respondent's Ex. B-1 at pgs. 115-21).

for performing in a particular way in a case as long as the approach taken "might be considered sound trial strategy") (quoting *Darden v. Wainwright*, 477 U.S. 168 (1986)). Consequently, Rogers fails to establish that the state courts' denial of this claim was either contrary to or an unreasonable application of *Strickland* or resulted in a decision that is based on an unreasonable determination of the facts.

Rogers also complains that defense counsel was ineffective in failing to develop Lundin as another suspect. Defense counsel actively investigated Lundin as a possible suspect (Respondent's Ex. B-4 at pgs. 630-37). However, Thompson, who had stated he saw an older white male with the victim on the night of her death, told defense counsel that Lundin was not the older man he saw with the victim (Id. at pgs. 651-52). Defense counsel took Mitchell Monteverdi's (hereinafter "Monteverdi") deposition after learning that Monteverdi had allegedly spoken with Lundin in prison about Rogers' case, and that Lundin told him that "the bitch had to answer to me" which Monteverdi believed meant Lundin killed the victim in Rogers' case. However, defense counsel concluded that he should not call Monteverdi as a witness because he was not credible, had filed a pro se motion in the case stating that he was going to be a witness for the State, and was a "dangerous" witness because defense counsel did not know "what he would have said in the presence of the jury"[12] (Id. at pgs. 642, 654). Furthermore, defense counsel feared that calling Monteverdi and pursuing Lundin as a witness would open the door for the State to present evidence that

---

[12]After Monteverdi's deposition, he gave another statement to the State in which he stated that there was a conspiracy to implicate Lundin for the murder of the victim in Rogers' case (Respondent's Ex. B-4 at pgs. 714-15; Ex. B-5 at pg. 833).

Rogers orchestrated a conspiracy in prison to implicate Lundin for the murder (Id. at pg. 657). Defense counsel did not want to risk the introduction of this evidence that he believed would have been "absolutely dangerous" and "very damaging to Mr. Rogers' case." (Id. at pgs. 657-61). Moreover, defense counsel actively attempted to locate Lundin and obtain evidence that Lundin was at or near the scene at the time of the murder, but was unable to do so (Id. at pgs. 646-47).

In light of these reasonable strategic considerations, defense counsel's performance was not deficient. See, e.g., *Strickland*, 466 U.S. at 690-91 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable..."). Furthermore, Rogers has not demonstrated prejudice. The prosecutor testified at the evidentiary hearing that she knew Lundin was in Texas at the time of the murder (Respondent's Ex. B-5 at pg. 857).[13]

Consequently, Rogers fails to establish that the state courts' denial of this claim was either contrary to or an unreasonable application of *Strickland* or resulted in a decision that is based on an unreasonable determination of the facts.

Finally, Rogers complains that prosecutorial misconduct deprived him of a reliable adversarial testing. The claim raised in Rogers' federal habeas petition is a substantive claim of prosecutorial misconduct pertaining to the prosecutors taking a sworn statement of

---

[13]The newspaper article that states in pertinent part that Lundin spoke to the victim's mother "in the days after her daughter's murder" (Respondent's Ex. B-15 at Attachment A) does not overcome the presumption of correctness of the state courts' factual findings. 28 U.S.C. § 2254(e)(1). Nor does the information that Lundin had "frequented the area of the murder." (Respondent's Ex. B-8 at pgs. 1334-35).

Monteverdi without defense counsel being present during the statement, the prosecutors making an implied threat of perjury to Monteverdi, the prosecutors attempting to implicate Monteverdi in a conspiracy to frame Lundin for the victim's death in Rogers' case, and Monteverdi's transfer to Union Correctional Institution and subsequent booking there under a different name (See Dkt. 1at pgs. 20-21). This sub-claim is not presented as an ineffective assistance of counsel claim.

This Court agrees with the Florida Supreme Court's determination that "Rogers failed to specifically plead any valid ineffective assistance claim in...his initial brief on appeal to this Court; rather, he chose to substantively argue the issue as one of prosecutorial misconduct." *Rogers v. State*, 957 So. 2d at 547. In his brief, Rogers did not argue that counsel was ineffective in failing to object to the alleged prosecutorial misconduct pertaining to Monteverdi. Instead, Rogers essentially argued in his brief that "[t]he net effect of the prosecutor's actions" and defense counsel's failure to call Monteverdi as a witness "deprived Mr. Rogers the opportunity to develop an alternate suspect." (Respondent's Ex. B-15 at pgs. 50-52). Consequently, to the extent Rogers attempts to present a claim that counsel was ineffective in failing to object to the prosecutors' threatening Monteverdi with perjury and taking his unnoticed deposition, the claim is unexhausted and procedurally barred.[14]

Furthermore, Rogers' substantive claim of prosecutorial misconduct does not warrant relief. The Florida Supreme Court found that "Monteverdi's testimony would have seriously

---

[14]Even if the claim were not procedurally barred, it fails on the merits. As noted, *supra*, defense counsel's performance was not deficient in failing to call Monteverdi as a witness. Further, Rogers fails to demonstrate prejudice as a result of counsel's failure to call Monteverdi as a witness.

jeopardized the defense's case" and therefore concluded that "any claim alleging that prejudice resulted in the failure of Monteverdi to testify because of prosecutorial misconduct is likewise without merit." *Rogers v. State*, 957 So. 2d at 547-48. Monteverdi gave a sworn statement that Rogers and other prisoners were involved in a conspiracy to implicate Lundin for the murder of the victim in Rogers' case. (Respondent's Ex. B-2 at pgs. 267-89). Rogers fails to rebut the Florida Supreme Court's finding of fact that Monteverdi's testimony would have jeopardized Rogers' case with clear and convincing evidence. Because Monteverdi's testimony would have jeopardized Rogers' case, Rogers cannot show prejudice as a result of the prosecutors' alleged misconduct. Consequently, even if the prosecutors' conduct constituted a constitutional violation, Rogers has not established prejudice as a result of the alleged misconduct. See *Brecht*, 507 U.S. at 637 (constitutional error harmless and does not warrant habeas relief unless it "had substantial and injurious effect or influence in determining the jury's verdict") (citation omitted).

Rogers has not demonstrated that the Florida Supreme Court's denial of this claim was contrary to, nor an unreasonable application of, clearly established federal law, as determined by the Supreme Court within the meaning of 28 U.S.C. § 2254(d). Accordingly, Ground Eleven will be denied.

**Ground Twelve**

"Mr. Rogers was deprived of his right to a reliable adversarial testing due to newly discovered evidence at the guilt phase of his trial, in violation of Mr. Rogers' Fifth, Sixth, Eighth and Fourteenth Amendment rights under the United States Constitution and his corresponding rights under the Florida Constitution." (Dkt. 1 at pg. 23).

In Ground Twelve, Rogers complains that his federal constitutional right to a reliable adversarial testing was violated because newly discovered evidence shows that there were improprieties at the FBI laboratory's DNA unit, and that this information could have been used to impeach Dr. Baechetel's testimony at trial that the victim was the major contributor to a stain found on a pair of Rogers' shorts. Rogers argues that the stain on his shorts was the only evidence that he murdered the victim.

In denying this claim, the Florida Supreme Court stated:

In his next issue on appeal, Rogers asserts that newly discovered evidence renders his conviction unreliable and compels a new trial. Specifically, he alleges that the trial court erred in summarily denying his claim that newly discovered evidence of alleged improprieties at the FBI lab would have impeached the testimony of the State's DNA expert, Dr. Baechetel, and vitiated the only piece of evidence implicating Rogers in Cribbs' murder--a pair of Rogers' blue jean shorts that contained a mixed stain of biological materials.

At trial, Dr. Baechetel testified that he performed the DNA analysis of the mixed stain found on Rogers' blue jean shorts. He explained that he used the PCR method of analysis on the mixed stain, which is less likely than other DNA tests to exclude possible contributors to a sample. Neither Cribbs nor Rogers could be excluded as contributors to the DNA in the stain. Dr. Baechetel also stated that he could not exclude Cribbs as a major contributor to the stain, i.e., that Cribbs' DNA constituted more of the total DNA than that of any other contributor, and he similarly could not exclude Rogers as a minor contributor. On cross-examination, Dr. Baechetel agreed that the source of DNA can be any number of bodily fluids. He also admitted that there was no way to determine what fluid other than blood was in this mixed stain, when the fluids in the mixed stain were deposited, which person's fluid was deposited first, or how many other potential contributors were associated with this stain.

At trial, Dr. Acton, the defense expert, generally concurred with Dr. Baechetel, agreeing that the methodology and testing methods were standard protocols and the PCR method of testing had less discriminatory power than other DNA tests. He testified that the mixed stain had the DNA of at least two contributors and neither Cribbs nor Rogers could be excluded. Dr. Acton further agreed

69

with Dr. Baechetel that it was impossible to determine what biological fluid may have contributed to the mixed stain. However, unlike Dr. Baechetel, Dr. Acton did not believe it could be determined who was the major or minor contributor to the mixed stain.

In April 1997, the Office of the Inspector General issued an investigative report (OIG report) describing poor laboratory practices in several units at the FBI's crime lab. The initial report was limited to three specific units within the lab, but additional research later revealed similar improprieties within the DNA unit. These supplementary findings regarding the DNA unit were presented to the Senate Judiciary Subcommittee on Administrative Oversight in September 1997.

FN15 Office of the Inspector General, U.S. Dep't of Justice, The FBI Laboratory: An Investigation into Laboratory Practices and Alleged Misconduct in Explosives-Related and Other Cases (1997), available at http://www.usdoj.gov/oig/special/9704a/.

FN16 Although the improprieties addressed technician incompetence, inaccurate record-keeping, and the fabrication of test results, neither the test results in this case nor the expert who testified for the State were specifically identified within this newly discovered evidence.

In summarily denying this claim, the trial court found:

> The newly discovered evidence does not specifically address the work of Frank Samuel Baechetel. Furthermore, Dr. Baechetel's opinion simply stated that the victim could not be excluded as a contributor to a stain found on Defendant's shorts and that Defendant could not be excluded as a contributor to a stain found on Defendant's shorts. If this opinion was the sole basis for the conviction, then the Court would be more inclined to believe the outcome of the trial was tainted. However, the State provided substantial, competent other evidence to sustain the conviction. As such, there is no evidence that the outcome of the trial probably would have been different had this newly discovered evidence been introduced. Therefore, Defendant is not entitled to any relief on this claim.

(Transcript citation omitted.) Essentially, the trial court concluded that the newly discovered evidence did not specifically call into question the work of

the State's expert; that the opinion of the State's expert did not conclusively establish that Rogers murdered Cribbs; and that the State expert's testimony was not the sole basis for the conviction. Accordingly, the trial court concluded that introduction of the new evidence probably would not have changed the outcome. We agree.

For a conviction to be set aside based on newly discovered evidence, two requirements must be met: First, the trial court, the party, or counsel must not have known of the evidence at the time of trial, and it must appear that defense counsel could not have known of it by the use of diligence. Second, the newly discovered evidence "must be of such nature that it would probably produce an acquittal on retrial." *Jones v. State*, 709 So. 2d 512, 521 (Fla. 1998) (Jones II). Newly discovered evidence satisfies the second prong of the Jones II test if it "weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability." *Id*. at 526 (quoting *Jones v. State*, 678 So. 2d 309, 315 (Fla. 1996)).

In determining whether the evidence compels a new trial, the trial court must "consider all newly discovered evidence which would be admissible." *Jones v. State*, 591 So. 2d 911, 916 (Fla. 1991) (Jones I). This determination includes

> whether the evidence goes to the merits of the case or whether it constitutes impeachment evidence. The trial court should also determine whether the evidence is cumulative to other evidence in the case. The trial court should further consider the materiality and relevance of the evidence and any inconsistencies in the newly discovered evidence.

*Jones II*, 709 So. 2d at 521 (citations omitted).

The first requirement under *Jones II* is that the evidence must be newly discovered, i.e., evidence that, at the time of trial, was not known and could not have become known by the use of due diligence. 709 So. 2d at 521. The State does not contest this prong and we accept the lower court's conclusion that the evidence is newly discovered.

The second requirement under *Jones II* is that the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial. *Id*. Because this portion of the test requires the Court to "evaluate the weight of both the newly discovered evidence and the evidence which was introduced

at the trial," we must also discuss the remaining evidence of guilt produced at trial. *Jones I*, 591 So. 2d at 916.

In addition to Dr. Baechetel's testimony concerning the results of the DNA testing of the mixed stain, the State presented substantial evidence implicating Rogers in the murder. Witnesses testified that Rogers was seen leaving a bar with Cribbs on the afternoon of the murder and that he was seen packing a white Ford Festiva, identified as Cribbs' automobile, at his motel that same evening. A motel clerk testified that after she saw Rogers packing the car, Rogers paid for an additional night and told the clerk not to allow housekeeping to enter his room. She also stated that she saw Rogers leave the motel in Cribbs' car the next morning. The cleaning crew found a handwritten "Do Not Disturb" sign hanging on the door of Rogers' motel room and then entered the room, discovering Cribbs' clothed body in the bathtub. Rogers' fingerprints were found on Cribbs' wallet, which was left at a highway rest stop near Tallahassee, and Rogers was apprehended in Cribbs' automobile in Kentucky. Upon arrest, Rogers claimed that he met a girl at a bar and brought her to his motel room, and that she loaned him the car. He stated that he left to get cigarettes and beer and never returned. He also told police that he could not tell them the truth. *See Rogers*, 783 So. 2d at 985-86.

FN17Several other pieces of evidence were found in Cribbs automobile, including the key to the motel room where Cribbs' body was found, a bloodstained T-shirt, a cooler and duffel bag, and the jean shorts containing the mixed stain discussed above.

Rogers contends that when evaluated with the evidence described above, the information concerning the alleged improprieties at the FBI lab would probably produce an acquittal on retrial because this information vitiates the only evidence linking Rogers to the murder. This contention is not borne out by the record in this case.

First, nothing in the OIG report or related documents points to specific improprieties with the sample in this case or with Dr. Baechetel's practices in general. At most, the report calls into question the reliability of the lab overall and could have been used to impeach Dr. Baechetel's testimony as to the validity of the results.

Second, even if this Court were to conclude that the newly discovered evidence vitiates the DNA results, this is not the only piece of evidence connecting Rogers to the murder. Nothing presented calls into question the

wealth of other circumstantial evidence supporting the conviction. *Cf. Buenoano v. State*, 708 So. 2d 941, 951 (Fla. 1998) (holding that although the OIG report was newly discovered, it was "not of such a nature that it would probably produce a different result on retrial," because there was "ample evidence to show beyond a reasonable doubt that Buenoano committed the murder"). Because Rogers has failed to demonstrate that the newly discovered evidence would probably produce an acquittal on retrial, we affirm the denial of relief on this claim.

*Rogers v. State*, 957 So. 2d at 550-53.

Under the facts of this case, Rogers has not stated a cognizable federal constitutional claim. Therefore, he is not entitled to federal habeas corpus relief. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("'the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus' . . . [because] federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution - not to correct errors of fact").

Furthermore, even if Rogers' claim were cognizable for habeas relief, it would still fail for lack of merit. To grant relief on the basis of newly discovered evidence, the evidence must be such that it "would probably produce an acquittal" on retrial. *U.S. v. Provost*, 969 F.2d 617, 620 (8th Cir. 1992). Rogers was not convicted solely on the evidence of the DNA test. The Florida Supreme Court correctly found that there was substantial other circumstantial evidence supporting the first-degree murder conviction. Rogers has not shown that were he able to use the evidence regarding the reliability of the FBI laboratory to impeach Dr. Baechetel's testimony, it would probably produce an acquittal on retrial.

Rogers has failed to show that the Florida Supreme Court's denial of this claim was

contrary to or an unreasonable application of clearly established federal law. Ground Twelve

will, therefore, be denied.

**Ground Thirteen**

"Mr. Rogers was deprived of his right to a reliable adversarial testing due to ineffective
assistance of counsel at the guilt phase of his capital trial, in violation of Mr. Rogers' Fifth,
Sixth, Eighth and Fourteenth Amendment Rights under th [sic] United States Constitution
and his corresponding rights under the Florida Constitution. Trial Counsel was ineffective
in failing to object to improper prosecutorial comments during closing arguments in the guilt
phase of his trial." (Dkt. 1 at pg. 26).

In Ground Thirteen, Rogers complains that his trial counsel was ineffective in failing

to object to improper comments by the prosecutor during closing argument in the guilt phase

of the trial. Specifically, Rogers asserts trial counsel failed to object to the prosecutor stating

that defense counsel had a "very vivid imagination." Rogers also avers that trial counsel

failed to object to the prosecutor vouching for the credibility of a State's witness, and

bolstering the credibility of that State's witness and the Kentucky State Police Department.

In denying this claim, the Florida Supreme Court stated:

In his next issue on appeal, Rogers contends that the trial court erred in
summarily denying his claim that counsel was ineffective during the guilt
phase for failing to object to improper prosecutorial comments during the
State's closing argument. Specifically, Rogers argues that trial counsel was
ineffective for failing to object to the following comments: (1) repeatedly
referring to defense counsel's vivid imagination and how the defense's closing
argument was a product of that imagination; (2) bolstering the credibility of
Dr. Schultz, the State's expert who performed the autopsy; and (3) bolstering
the credibility of the Kentucky Police Department, which arrested Rogers and
performed serology and fingerprint testing on the vehicle and the items founds
therein. The circuit court summarily denied this claim, finding the prosecutor's

comments to be proper rebuttal when viewed in tandem with defense counsel's closing argument. We agree with this assessment.

FN12 Here, there is no factual dispute as to what each attorney said during their respective closing arguments; thus, the trial court did not err when it reviewed the record, made a legal determination that the comments were proper, and denied the claim without holding an evidentiary hearing.

After reviewing the guilt-phase closing arguments, we disagree with Rogers' assertion that the arguments regarding Dr. Schultz and the Kentucky Police Department constituted impermissible bolstering. Defense counsel directly attacked the credibility of Dr. Schultz and the Kentucky police witnesses, and the prosecutor's response to these attacks was within the permissible bounds of advocacy. Similarly, we disagree with Rogers' assertion that the prosecutor's arguments regarding defense counsel were improper. The prosecutor's comments rebutted defense counsel's closing argument, in which he presented theories that were not based on facts in evidence. Because none of the closing arguments were improper, counsel cannot be deemed ineffective in failing to object to them. *See Mungin v. State*, 932 So. 2d 986, 997 (Fla. 2006) (holding that defense counsel was not ineffective for failing to object because none of the comments were improper); *Walls v. State*, 926 So. 2d 1156, 1166 (Fla. 2006) (holding that defense counsel was not ineffective for failing to object to comments that were proper responses to the preceding argument by the defense).

*Rogers v. State*, 957 So. 2d at 548.

The state courts denied this claim because they determined that the prosecutor's statements were appropriate. Under Florida law, trial counsel is permitted wide latitude in arguing to a jury. *Breedlove v. State*, 413 So. 2d 1 (Fla. 1982). Federal law also allows wide latitude in this regard. To prevail under federal law, Petitioner must show the comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Darden v. Wainwright*, 477 U.S. 168 (1986).

It is not within the province of this Court to determine whether the state courts properly resolved an issue of state law. That is for the state courts to decide. *Herring v. Secretary, Dept. of Corrections*, 397 F. 3d 1338 (11th Cir. 2005). Because the state courts determined that the comments in question were appropriate under state law, Rogers trial counsel did not perform deficiently by not objecting to the comments. It is not deficient performance to fail to object to matters that are not objectionable. *See Diaz v. Sec'y for Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005)(failure to raise meritless arguments will not render counsel's performance ineffective). And, had the objection been made by trial counsel, it would have been overruled by the trial court and the comments allowed to stand. Therefore, there was no prejudice. This claim fails both prongs of the *Strickland*.

Furthermore, it can be reasonably concluded that none of the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. *See Donnelly v. DeChristoforo*, 416 U.S. at 642; *Cargill v. Turpin*, 120 F.3d at 1379 (if reviewing court is confident that, absent improper prosecutorial remarks, jury's decision would have been no different, proceeding cannot be said to have been fundamentally unfair, and habeas relief is not warranted). The prosecutor's comment that defense counsel "has a very vivid imagination" (Respondent's Ex. A-20 at pg. 2451) was merely a response to defense counsel's closing argument which proposed possible scenarios that were not supported by the evidence. (See Respondent's Ex. B-5 at pg. 893; Ex. A20 at pgs. 2426-27).

The prosecutor's comments regarding Dr. Schultz[15] and the Kentucky police[16] were designed to rehabilitate those witnesses after defense counsel attacked the reliability of the evidence presented through those witnesses.[17]  In view of the evidence which established his guilt of the crimes for which Rogers was found guilty, any claimed constitutional error in the prosecutor's remarks had no substantial and injurious effect or influence in determining the jury's verdict.  *Brecht*, 507 U.S. at 637.

Rogers fails his burden of proving that the state court's resolution of this claim was an unreasonable application of controlling Supreme Court precedent.  Accordingly, Ground Thirteen does not warrant habeas corpus relief.

**Ground Fourteen**

"Mr. Rogers was deprived of his right to a reliable adversarial testing due to ineffective assistance of counsel at the penalty phase of his capital trial, in violation of Mr. Rogers' Fifth, Sixth, Eighth and Fourteenth Amendment rights under the United States Constitution and his corresponding rights under the Florida Constitution.  Trial Counsel was ineffective in failing to object to improper prosecutorial comments during closing arguments in the penalty phase of his trial."  (Dkt. 1 at pg. 28).

In Ground Fourteen, Rogers complains that trial counsel was ineffective in failing to: 1) object to improper prosecutorial comments during the penalty phase of the trial; and 2) object during the charge conference to the exclusion of a jury instruction that Rogers killed the victim while Rogers was under the influence of extreme mental or emotional

---

[15]See Respondent's Ex. A-20 at pg. 2464.

[16]See Respondent's Ex. A-20 at pg. 2480.

[17]During closing argument, defense counsel compared the Kentucky police department to the "Keystone Cops" on more than one occasion.  (Respondent's Ex. A-20 at pgs. 2387, 2389).  Defense counsel attacked Dr. Schultz as young and inexperienced.  (Respondent's Ex. A-20 at pg. 2440).

disturbance.[18] Rogers raised his claim of ineffective assistance of counsel in failing to object to improper prosecutorial comments during the penalty phase trial in his amended motion for postconviction relief.  (Respondent's Ex. B-1 at pgs. 38-81).  The postconviction court denied relief, and the Florida Supreme Court affirmed, holding:

> Rogers next asserts that the trial court erred in denying his claim that defense counsel provided ineffective assistance for failing to object to the prosecutor's comments during the penalty-phase closing argument.  Specifically, Rogers argues that trial counsel was ineffective for failing to object to the following prosecutorial comments: discussing the victim's perceptions and thoughts just before her death; denigrating the statutory mitigator that Rogers had an impaired capacity to appreciate the criminality of his conduct by asserting that voluntary intoxication and brain damage are no excuse for murder; denigrating the non-statutory mitigator that Rogers had a childhood deprived of love and affection by asserting that Rogers was an adult who should stop blaming his parents for his behavior; and making the "Desert Storm" argument by comparing her father's sense of duty to serve in the military, even when faced with brain cancer, to the jury's duty to sentence Rogers to death. This Court reviewed the prosecutor's comments about voluntary intoxication, a childhood deprived of love, and "Desert Storm" on direct appeal; however, we have not previously addressed the comments regarding the victim's perceptions prior to death and Rogers' alleged brain damage.

> FN13 Unlike the claim related to the State's guilt-phase closing argument, the trial court held an evidentiary hearing on whether trial counsel was ineffective by failing to object during the State's penalty-phase closing argument.

> We will begin our analysis by examining the propriety of the comments because, as stated in connection with the guilt-phase closing argument claim, trial counsel cannot be deemed ineffective for failing to object to arguments that are proper. First, we address the two prosecutorial comments that were not specifically raised on direct appeal.

> Rogers initially alleges that the prosecutor improperly theorized about Cribbs' perceptions at the time of the murder. The prosecutor stated the following:

---

[18]Rogers does not present this subclaim in the heading of Ground Fourteen.  (Dkt. 1 at pg. 28).  He does, however, present the subclaim in the "Supporting facts" section under Ground Fourteen.  (Id.).

We know that she knew she was going to be killed, . . . we know when she was stabbed the first time, she didn't become unconscious; she remained conscious and she could feel the pain of the knife going through her body and could feel the pain of the knife as it was twisted and pulled out of her body, and then he did it again.

. . . .

What weight do you give to the ten, twenty minutes where she was there in that bathroom reflecting back on her life, on the things that she hadn't done that she wished she could, the opportunities that had never been presented to her, on her children that she would never see again, on her mother who loved her so dearly . . . .

These arguments were not improper because they were based upon facts in evidence--the victim was stabbed twice, she struggled with her assailant, and she remained alive for at least a short period of time after being stabbed. See *Rogers*, 783 So. 2d at 994. Additionally, this is not a case in which the prosecutor made an improper "golden rule" argument by attempting to place the jury in the position of the victim. See *Garron v. State*, 528 So. 2d 353, 358-59 (Fla. 1988) (holding that comments such as, "[Y]ou can just imagine the pain of [the victim] . . . . Imagine the anguish and the pain [the victim] felt," improperly placed the jury in the position of the victim) (first alteration in original). Rather, the prosecutor was describing the heinousness of the crime for the purpose of establishing the HAC aggravator. This Court has held that for purposes of the HAC aggravator, "a common-sense inference as to the victim's mental state may be inferred from the circumstances." *Banks v. State*, 700 So. 2d 363, 366 (Fla. 1997). Accordingly, we conclude that trial counsel was not deficient for failing to object.

Rogers also contends that the prosecutor improperly denigrated the statutory mitigator concerning his capacity to appreciate the criminality of his conduct by stating: "Mr. Rogers is a violent, aggressive person and brain damage has nothing to do with it." Although we have held that denigrating a statutory mitigator is improper, see *Brooks v. State*, 762 So. 2d 879, 904 (Fla. 2000) (holding that repeated characterization of mitigating circumstances as "flimsy," "phantom," and "excuses" was improper denigration), that is not what occurred in this case. The prosecutor was merely responding to defense counsel's argument that Rogers' aggressive behavior was due to a history of head trauma,

a brain contusion, and damage to the frontal and temporal lobes of his brain. Accordingly, counsel is likewise not deficient for failing to object to this comment.

Second, we address the prosecutorial comments raised by Rogers that were previously reviewed on direct appeal: the discussion of voluntary intoxication as it related to the statutory mitigator of an impaired capacity to appreciate the criminality of the conduct, the discussion of the nonstatutory mitigator of a childhood deprived of love, and the "Desert Storm" comment. The only comment we found improper was the reference to Desert Storm. *Rogers*, 783 So. 2d at 1002. Because trial counsel cannot be deemed ineffective for failing to object to comments that are proper, see *Mungin*, 932 So. 2d at 997, the failure to object to the Desert Storm reference is the sole remaining basis of this ineffective assistance claim. Thus, Rogers must establish that the failure to object to this single comment constitutes deficient performance and that, as a result of the deficient performance, our confidence in the penalty-phase outcome is undermined. We do not address deficient performance because we conclude that prejudice has not been established.

During penalty-phase closing argument, prosecutor Cox discussed how her father decided to serve in Operation Desert Storm even after being diagnosed with brain cancer. Essentially, Cox equated her father's "noble sacrifice for his country with the jury's moral duty" to sentence Rogers to death. Addressing this argument on direct appeal, we held that this "single unobjected-to argument [did not] constitute fundamental error, nor does it warrant a mistrial." *Rogers*, 783 So. 2d at 1002 (citation omitted). This Court has held that counsel's failure to object to improper comments cannot prejudice the outcome if the comments were raised on direct appeal and do not rise to the level of fundamental error. See *Chandler v. State*, 848 So. 2d 1031, 1045-46 (Fla. 2003).

FN14 Rogers asserts that our holding in *Ruiz v. State*, 743 So. 2d 1 (Fla. 1999), requires reversal of his death sentence. In *Ruiz*, we condemned Cox's use of this identical comment during closing argument and reversed Ruiz's sentence based on this argument and the existence of a multitude of other improper comments and prosecutorial overreaching. 743 So. 2d at 6-7. Although we agree that the comment was improper, this case is not like *Ruiz*, in which the prosecutor made several improper comments which compromised "the integrity of the judicial process" and irreparably tainted the sentence. *Id*. at 7.

Moreover, the existence of strong aggravation and relatively weak mitigation further supports our conclusion that prejudice cannot be demonstrated. Because we find that Rogers has failed to demonstrate that counsel's failure to object to any of the prosecutorial comments resulted in ineffective assistance, we affirm the trial court's denial of relief on this claim.

*Rogers v. State*, 957 So. 2d at 548-50.

With respect to the closing argument regarding the victim's final moments, the prosecutor stated:

We know that she knew that she was going to be killed. We know that she struggled vainly with this man as he was armed with a knife that had a 9-inch blade. We know that she was stabbed the first time. We don't know which one was first, but we know when she was stabbed the first time, she didn't become unconscious; she remained conscious and she could feel the pain of the knife going into her body and could feel the pain of the knife as it was twisted and pulled out of her body, and then he did it again. We know that she had defensive wounds, and we know that she had bruises and contusions. But basically, she was trapped in a very small area and there was nowhere for her to go. You look at these horrible, horrible pictures and nobody likes looking at these pictures, but it's your job to decide what the punishment should be for this, what he did. The blood smears on the wall where she grabs her chest and then tried to support herself in the last moments of her life. What weight do you give to the ten, twenty minutes where she was there in that bathroom reflecting back on her life, on the things that she hadn't done that she wished she could, the opportunities that had never been presented to her, on her children that she would never see again, on her mother who loved her so dearly. And during that period of time, this beeper may have been going off because even in death, the beeper didn't leave her side. And as she remained conscious, helpless, defenseless and dying, the calls from Mary Dicke may have been beeping on that beeper and there was nothing she could do about it. And in her mind, she knew her mother was looking for her and waiting for her and worrying about her and that she would never see her again. What weight do you give to the fact that it took her twenty minutes to an hour to die, to bleed out in the bathtub of a low rent hotel? There's no dignity in death, and it's horrible to contemplate the circumstances of anybody's death, but this man orchestrated that horrible death for Tina Marie Cribbs, a woman he didn't know.

(Respondent's Ex. B-15 at pgs. 2819-21).

A review of the closing argument reasonably supports the Florida Supreme Court's conclusion that the prosecutor's remarks with regard to the victim's final moments were proper because they were based on facts in evidence, and used to establish the heinous, atrocious, or cruel aggravator. There was evidence that the victim's mother paged the victim on numerous occasions on the night she left with Rogers and was subsequently murdered. There was also evidence that the victim sustained defensive wounds, and that her fatal wounds were not immediately fatal, and the victim could have been alive 20 minutes or more after she was stabbed (Respondent's Ex. A at pgs. 1907-30). With respect to the prosecutor's statements regarding the victim's thoughts as she lay dying, in Florida for the purpose of the heinous, atrocious, or cruel aggravator, "a common-sense inference as to the victim's mental state may be inferred from the circumstances." *Banks v. State*, 700 So. 2d 363, 366 (Fla. 1997).

With respect to Rogers' claim that the prosecutor improperly denigrated the statutory mitigator that Rogers' capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired, the prosecutor stated:

> Mr. Rogers is a violent, aggressive person and brain damage has nothing to do with it. That's Glen Rogers.

> ****

> Is there anything about the excuse of voluntarily [sic] use of alcohol that in any way mitigates the death of Tina Marie Cribbs? Oh, Mr. Rogers goes to a bar, spends his money to drink alcohol and then kills somebody and we're supposed to say, oh, well, that somehow takes away from the horror of that

woman's death. And was there any indication that he was drunk? None. That was speculation. Nobody at the bar thought he was drunk. They all thought he was charming and smooth. No one told you anything other than he was drinking.

(Respondent's Ex. A-23 at pg. 2827-28).

A review of the closing arguments and the record reasonably supports the Florida Supreme Court's conclusion that the prosecutor's remarks with regard to Rogers' brain damage were made in response to the defense's argument and the evidence presented at trial that Rogers' violent behavior was due to brain injuries. (See Respondent's Ex. A-22 at pgs. 2695-2732). The prosecutor's remark was also consistent with Dr. Berland's testimony that he did not know whether Rogers' brain injuries had any effect on Rogers' propensity for violence. (See Respondent's Ex. A-22 at pg. 2736-37). Likewise, the prosecutor's remarks regarding Rogers' alcohol consumption were made in response to Dr. Maher's testimony that the combination of Rogers' mental illnesses and his alcohol consumption would have substantially impaired his capacity to appreciate the criminality of his conduct, and his testimony that he did not know how much Rogers had to drink or if he was intoxicated. (See Respondent's Ex. A-22 at pgs. 2757-59; 2763-67).

With respect to Rogers' claim that the prosecutor denigrated the non-statutory mitigator that Rogers had a childhood deprived of love and affection, the prosecutor stated:

We heard about childhood difficulties. Everybody has childhood difficulties. Claude had childhood difficulties. He grew up in the same family. And as bad as he wants to make it look, he moved to California and then he moved back to Hamilton, Ohio [,] for a couple of years, back to that house. Now, if it was so bad, what's that about? You're an adult and you're moving back into that house?

83

> And the thing is, to what point can we stop blaming our childhood, can we stop blaming the frailties of our parents? Because every parent is a human being. No one is blessed with perfect parents. We all try to be, but we all have our shortcomings. When you're 34 years old, is it fair to blame anybody but yourself? When is it that we as a society call upon the individual as an adult to take responsibility for their actions? He and he alone is responsible.

(See Respondent's Ex. A-23 at pg. 2829).

A review of the closing arguments and the record reasonably supports the Florida Supreme Court's conclusion that the prosecutor's remarks with regard to Rogers' having a childhood deprived of love and affection were not improper. The defense presented evidence of the effect childhood family violence and the lack of affection had on Rogers. (See Respondent's Ex. A-22 at pgs. 2625-52; 2756-57). The prosecutor was merely attempting to rebut the defense's mitigating evidence regarding Rogers' childhood family violence and lack of affection. See e.g., *Poole v. State*, 997 So. 2d 382, 395 (Fla. 2008) (prosecutor's comment that although defendant went to church as a child, he was not a child anymore but a man who committed a crime was not improper where prosecutor was attempting to rebut mitigating evidence argued by the defense that defendant was a good, loving person who came from a good family).

In *Chandler v. Moore*, 240 F.3d 907 (11th Cir. 2001), the Eleventh Circuit Court of Appeals held:

> In order to establish a claim of ineffective assistance of counsel with regard to the comments to which counsel did not object, Chandler must show that his counsel's performance was deficient, and this deficient performance prejudiced the outcome of his sentencing. *Strickland*, 466 U.S. at 687, 104 S. Court. 2052. This two-pronged test is also applied to the sentencing phase because the capital sentencing proceeding is similar to a trial in its adversarial format and

> counsel's role is similar. *Id*. at 686-87, 104 S. Court. 2052. To succeed on this claim, Chandler must show that "counsel's conduct so undermined the proper functioning of the adversarial process that the sentence cannot be relied on as having produced a just result." *Mincey v. Head*, 206 F.3d 1106, 1143 (11th Cir. 2000).

*Id*. at 916-17. Since the prosecutor's comments regarding the victim's thoughts just before her death, Rogers' brain damage and alcohol consumption, and the violence and lack of affection Rogers experienced as a child were either fair comment on, or a fair inference from, the evidence, counsel's failure to object to the comments was not deficient performance.

As to the prosecutor's "Desert Storm" argument, the prosecutor commented:

> My father was a physician and he was a commander in the United States Navy Reserves, and about seven years ago, he got orders to go to Operation Desert Storm to command a hospital ship. And right about the same time that he got those orders, the doctors found a shadow on his brain. They couldn't say what it was, but his family, we knew, and we begged him not to leave. We begged him to stay because we knew the cancer would grow and eventually kill him.

> And knowing as we all did that his days were numbered, I said, "Please explain to the Navy that you can't go; you've got to stay here and be with us," and he said, "No, it's my duty."

> The thing about duty is that it's always difficult and it's usually unpleasant, but it's an obligation. When you got your jury summons in this case, it was a call to duty. No one here underestimates the difficulty of your task or the difficulty of what we're calling upon you to do. It is without any pleasure that I stand here and request the ultimate sentence be imposed in this case. But for there to be justice in the State of Florida, the punishment must fit the crime.

> This crime, this act of pure evil, the punishment must fit it. Justice can be harsh and demanding, but there's not one of these facts that are easy. We ask you to consider these things not because they're easy because we all know they're difficult and they're right. You have the courage and moral strengths to do justice in this case. Thank you.

(See Respondent's Ex. A-23 at pgs. 2833-34).

The Florida Supreme Court found that this statement was improper. However, it concluded that Rogers had not been prejudiced by the comment. The Florida Supreme Court found that trial counsel's failure to object to the comment did not prejudice the outcome because the comment was raised on direct appeal and did not rise to the level of fundamental error, and because there were strong aggravating circumstances and weak mitigation. *Rogers v. State*, 957 So. 2d at 550. Considering the strong circumstantial evidence of Rogers' guilt, and the aggravating and mitigating evidence presented at trial, Rogers has not demonstrated that there is a reasonable probability that, had the comment not been made, the jurors would not have recommended death and the state trial court would not have imposed the death sentence. See *Mills v. Singletary*, 63 F.3d 999, 1029 (11th Cir. Fla. 1995) ("We must determine 'whether there is a reasonable probability that, absent the [prosecutor's challenged remarks], the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'") (quoting *Strickland*, 466 U.S. at 695). Consequently, Rogers has failed to establish prejudice under the *Strickland* standard.

Regarding Rogers' claim that counsel was ineffective in failing to object during the charge conference to the exclusion of a jury instruction that Rogers killed the victim while Rogers was under the influence of extreme mental or emotional disturbance, this claim was not raised and argued in his brief on appeal from the order denying his amended 3.851 motion (see Respondent's Exs. B-15; B-16 at pg. 60 ). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's

court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845). Rogers failed to appeal the denial of his claim of ineffective assistance of counsel in failing to object to the exclusion of the "extreme mental or emotional disturbance" jury instruction. Consequently, Rogers deprived the state courts of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. A federal court cannot grant a habeas petition by a state prisoner unless the petitioner has exhausted his available state court remedies. *Snowden v. Singletary*, 135 F.3d at 735. Rogers' failure to appeal the trial court's denial of this claim renders it unexhausted for purposes of federal review. *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) (Florida state remedies are exhausted after appeal to the district court of appeal from denial of a collateral attack upon a conviction).

However, Rogers cannot challenge the denial of this claim in state court because the claim is procedurally barred. Because Rogers should have presented his claim to the Florida Supreme Court on appeal of the denial of his Rule 3.851 motion, Rogers' federal claim is procedurally barred from review in the state courts. See Fla. R. Crim. P. 3.850(g).

Rogers presents no argument to demonstrate cause and prejudice that would excuse his default. He has neither alleged nor shown that the fundamental miscarriage of justice exception applies. Because Rogers fails to proffer specific facts showing an exception to procedural default, *Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996), this claim is procedurally barred.

Regardless, the claim is without merit. Rogers fails to show counsel's performance was deficient in failing to object to the exclusion of the "extreme mental or emotional disturbance instruction" because the defense experts did not testify that Rogers killed the victim while he was under the influence of extreme mental or emotional disturbance. (See Ground Eight supra).

Rogers has failed to demonstrate that the state courts' rejection of these claims was contrary to or an unreasonable application of *Strickland*. Accordingly, Rogers is not entitled to relief on Ground Fourteen.

**Ground Fifteen**

"The Florida Death Sentencing Statute as Applied is Unconstitutional Under the Sixth, Eighth, and Fourteenth Amendments of the United States Constitution." (Dkt. 1 at pg. 30).

In Ground Fifteen, Rogers complains that any fact other than a prior conviction that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt. Rogers asserts that he had no prior convictions, and that other facts that were used to impose the death penalty were never submitted to the jury and proven beyond a reasonable doubt. Petitioner raised this claim in his state Rule 3.851 postconviction motion. (Respondent's Ex. B-1 at pgs. 104-10). The state trial court denied the claim. (Respondent's Ex. B-5 at pg. 880). Petitioner did not raise this claim on appeal of the denial of his Rule 3.851 post-conviction motion. (Respondent's Ex. B-15). In his state habeas petition, however, Petitioner asserted appellate counsel was ineffective in failing to raise this claim on direct appeal. (Respondent's Ex. C-1 at pgs. 7-

13).[19] In denying the ineffective assistance of appellate counsel claim, the Florida Supreme Court stated:

> In his first habeas claim, Rogers contends that appellate counsel provided ineffective assistance by failing to argue on direct appeal that Florida's death sentencing statute is unconstitutional as applied under the United States Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Court. 2348, 147 L. Ed. 2d 435 (2000), and *Ring v. Arizona*, 536 U.S. 584, 122 S. Court. 2428, 153 L. Ed. 2d 556 (2002). Of course, *Ring* was decided after the appeal in this case and appellate counsel was not ineffective for failing to anticipate the Supreme Court's decision in that case. Further, Rogers' argument that appellate counsel failed to argue the unconstitutionality of the sentence based on the failure of the indictment to allege aggravating circumstances is without merit. This Court has consistently held that neither *Apprendi* nor *Ring* requires that aggravating circumstances be charged in the indictment. *See Parker*, 904 So. 2d at 383; *Blackwelder v. State*, 851 So. 2d 650, 654 (Fla. 2003).
>
> Additionally, Rogers' argument that appellate counsel was ineffective for failing to argue that none of the statutory aggravators was individually found by a unanimous jury is equally without merit. The jury recommended that Rogers be sentenced to death by a unanimous vote; accordingly, any claim of unconstitutionality would have been rejected on direct appeal. *See, e.g., Crain v. State*, 894 So. 2d 59, 78 (Fla. 2004). Because neither argument has merit, we deny relief. *See Rutherford v. Moore*, 774 So. 2d 637, 643 (Fla. 2000) (holding that appellate counsel cannot be deemed ineffective for failing to raise a meritless argument on direct appeal).

*Rogers v. State*, 957 So. 2d at 554.

Initially, Rogers raised in his Rule 3.851 motion for postconviction relief the same or similar claim he raises in Ground Fifteen of the instant federal petition for writ of habeas corpus. However, Rogers' failure to raise the claim on appeal of the denial of his motion for post-conviction relief renders the claim unexhausted and procedurally barred.

---

[19]In his federal habeas petition, Rogers does not raise an ineffective assistance of appellate counsel claim in regards to this claim.

Title 28 U.S.C. § 2254(b) requires the exhaustion of state court remedies before a federal habeas corpus application will be entertained. *O'Sullivan*, 526 U.S. at 842. *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners 'federal rights'") (quoting *Duncan v. Henry*, 513 U.S. at 365).

To exhaust the claims raised in the state Rule 3.851 motion for postconviction relief, Rogers was required to appeal the state trial court's order denying relief. *See Leonard v. Wainwright*, 601 F.2d 807,808 (5th Cir. 1979) ("In Florida, exhaustion usually requires not only the filing of a Rule 3.850 motion, but an appeal of its denial" (citation omitted)). *See also, Rodwell v. Singletary*, 114 F.Supp.2d 1308, 1312 (M.D. Fla. 2000) (holding that failure to appeal denial of claim raised in post-conviction motion in a Florida court resulted in a procedural default, citing, *inter alia*, *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir.), *cert. denied*, 502 U.S. 944 (1991)); *Smith v. Jones*, 923 F.2d 588 (8th Cir. 1991) (claims presented in post-conviction motion and not appealed were procedurally barred in subsequent habeas proceedings). Furthermore, because Rogers received an evidentiary hearing on his Rule 3.851 motion for post-conviction relief, he was required to raise the claim he asserts in Ground Fifteen of the instant petition on appeal from the denial of the Rule 3.851 motion.

Rogers' failure to raise this issue on appeal constituted a waiver of the issue. See *Cortes v. Gladish*, 216 Fed. Appx. 897, 899-900 (11th Cir. 2007) (unpublished opinion). By choosing not to brief this claim, Rogers waived and defaulted it.

Claims or portions of claims which are not exhausted but which would clearly be barred if returned to state court must be dismissed. *See Tower*, 7 F.3d at 210. Here, it would be futile to dismiss this case to give Rogers the opportunity to exhaust his claim in state court because he could have and should have exhausted the claim by briefing the claim on appeal from the denial of postconviction relief. Rogers has not shown cause and prejudice to overcome the procedural default, and he has not shown that a fundamental miscarriage of justice will occur if this Court does not reach the merits of his claim. Therefore, Rogers' claim under Ground Fifteen is procedurally barred.[20]

Furthermore, even if Rogers' claim were not procedurally barred, it would fail for lack of merit. First, to the extent Rogers argues that the Florida Supreme Court's decision was contrary to or an unreasonable application of *Ring v. Arizona*, 536 U.S. 584 (2002) (see Dkt. 13 at pgs. 34-35), reliance on *Ring* is barred by the nonretroactivity doctrine of *Teague v. Lane*, 489 U.S. 288 (1989). *See Schriro v. Summerlin*, 542 U.S. 348, 358 (2004)("*Ring* announced a new procedural rule that does not apply retroactively to cases already final on direct review."); *Turner v. Crosby*, 339 F.3d 1247, 1286 (11th Cir. Fla. 2003)("*Ring*, like *Apprendi*, does not apply retroactively on collateral review in federal court in Turner's case

---

[20]*See Smith v. State*, 741 So. 2d 585 (Fla. 5th DCA 1999)(recognizing prohibition against successive appeals).

because his convictions and sentences became final before the Supreme Court announced *Ring*. Thus, Turner cannot collaterally challenge his convictions and sentences on the basis of a claimed *Ring* error.").

Accordingly, since Rogers' convictions and sentences became final in 2001, before the Supreme Court announced *Ring* on June 24, 2002, Rogers cannot pursue a claim under *Ring*.

Moreover, Rogers cannot show that an *Apprendi*[21]/*Ring* violation occurred. The Florida Supreme Court has recognized that the maximum penalty for first degree murder under Florida's sentencing scheme is death. *See Mills v. Moore*, 786 So. 2d 532, 536-38 (Fla.), *cert. denied*, 532 U.S. 1015 (2001). Likewise, the Florida Supreme Court has consistently denied challenges premised on *Ring*, concluding that Florida's sentencing scheme complies with the Sixth Amendment. *See, e.g., Kormondy v. State*, 845 So. 2d 41, 54 (Fla. 2003) (concluding that *Ring* does not require either notice of the aggravating factors on which the State will rely at sentencing or a special verdict form evidencing the aggravating factors found by the jury). Additionally, Rogers was found guilty beyond a reasonable doubt by a unanimous jury of the crimes that formed the basis of the "committed while the Defendant was engaged in the commission of a robbery or was committed for pecuniary gain" aggravator. (Respondent's Ex. A-3 at pg. 489).

---

[21]*Apprendi v. New Jersey*, 530 U.S. 466 (2000).

Rogers has not demonstrated that the state courts' denial of this claim is either contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Ground Fifteen does not warrant relief.

**Ground Sixteen**

"Florida Statute 921.141(5) is facially vague and overbroad in violation of the Eighth and Fourteenth Amendments, and the unconstitutionality was not cured because the jury did not receive adequate guidance in violation of the Eight and Fourteenth Amendments. Mr. Rogers' death sentence is premised on fundamental error which must be corrected. To the extent trial counsel failed to litigate these issues, trial counsel was ineffective." (Dkt. 1 at pg. 31).

In Ground Sixteen, Rogers asserts Florida Statute 921.141(5) is facially vague and overbroad because it authorizes the use of an underlying felony as an aggravating circumstance supporting the death sentence, and because the statute improperly shifts the burden of proof to the defendant to prove that the death penalty is not the appropriate sentence. Rogers also asserts that "[t]o the extent trial and/or appellate counsel failed to litigate these issues, counsel was ineffective." (Dkt. 13 at pg. 35). In denying this claim, the Florida Supreme Court stated:

> In his second habeas claim, Rogers asserts that section 921.141(5), Florida Statutes (2005), Florida's death sentencing statute, is unconstitutional because it authorizes the use of an underlying felony as an aggravator supporting the death sentence and improperly shifts the burden of proof to the defendant to prove that the death penalty is not the appropriate penalty. His claim is without merit.

> FN19 Rogers further contends that defense counsel provided ineffective assistance by failing to object on these grounds at trial. To the extent that Rogers is alleging ineffective assistance of trial counsel, we reject this claim because it is not appropriately raised in a petition for writ of habeas corpus. See *Reed v. State*, 875 So. 2d 415, 439-40 (Fla. 2004).

First, this Court has consistently rejected claims that "the aggravating circumstance that the murder was committed in the course of committing a specified felony is unconstitutional because it constitutes an automatic aggravator and does not narrow the class of persons eligible for the death penalty." *Arbelaez v. State*, 898 So. 2d 25, 46-47 (Fla. 2005) (quoting *Ault v. State*, 866 So. 2d 674, 686 (Fla. 2003)); see also *Blanco v. State*, 706 So. 2d 7, 11 (Fla. 1997). Second, we have held that the standard penalty-phase jury instructions do not "impermissibly shift the burden to the defense to prove that death is not the appropriate sentence." *Taylor v. State*, 937 So. 2d 590, 599 (Fla. 2006) (citing *Elledge v. State*, 911 So. 2d 57, 79 (Fla. 2005), and *Sweet v. Moore*, 822 So. 2d 1269, 1274 (Fla. 2002)). Third, the United States Supreme Court recently re-iterated that it is not improper for a statute to require the defendant to offer "mitigating circumstances sufficiently substantial to call for leniency." *Kansas v. Marsh*, 548 U.S. 163, 126 S. Court. 2516, 2523, 165 L. Ed. 2d 429 (2006) (quoting *Walton v. Arizona*, 497 U.S. 639, 650, 110 S. Court. 3047, 111 L. Ed. 2d 511 (1990)). Therefore, Rogers is not entitled to relief on this claim.

*Rogers v. State*, 957 So. 2d at 554-55.

First, Rogers' claim that use of the jury instruction on the aggravator commission of a murder during the course of a felony is unconstitutional lacks merit. The United States Supreme Court has held that it is permissible to use an element of the underlying crime as an aggravating circumstance during the penalty phase of a trial. *See Lowenfield v. Phelps*, 484 U.S. 231 (1988). *See also*, *Johnson v. Singletary*, 991 F.2d 663, 669 (11th Cir. 1993)("Nothing in *Stringer* indicates that there is any constitutional infirmity in the Florida statute which permits a defendant to be death eligible based upon a felony murder conviction, and to be sentenced to death based upon an aggravating circumstance that duplicates an element of the underlying conviction.")(discussing *Stringer v. Black*, 503 U.S. 222 (1992)).

Second, the Eleventh Circuit has previously rejected Rogers' claim with regard to the "burden shifting" argument. *Henderson v. Dugger*, 925 F.2d 1309, 1317-18 (11th Cir. 1991), *cert. denied*, 506 U.S. 1007 (1992).

Third and finally, Rogers' claims that both trial and appellate counsel were ineffective in failing to litigate these issues are procedurally barred. First, the Florida Supreme Court rejected Rogers' ineffective assistance of trial counsel claim "because it is not appropriately raised in a petition for writ of habeas corpus." *Rogers v. State*, 957 So. 2d at 554. The procedurally correct way to raise a claim of ineffective assistance of trial counsel in the Florida state courts is in a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 or 3.851. The procedurally correct way to present the Florida state courts with a claim of ineffective assistance of appellate counsel is in a petition for writ of habeas corpus filed with the appropriate Florida court of appeal. Because Rogers raised his ineffective assistance of trial counsel claim in his petition for writ of habeas corpus, and not in his Rule 3.851 post-conviction motion, the Florida Supreme Court rejected the claim as procedurally defaulted. Accordingly, his claim is procedurally barred from review in this Court.

Likewise, because Rogers did not assert in his petition for writ of habeas corpus to the Florida Supreme Court his claim that appellate counsel was ineffective in failing to litigate his claim on appeal (see Respondent's Ex. C-1 at pgs. 14-18), the claim is unexhausted and

procedurally barred from review in this Court. Further, even if his ineffective assistance of appellate counsel claim were not procedurally barred, Rogers' claim has no merit. It is the law of this Circuit that counsel is not ineffective for failing to advance a tenuous or meritless claim on appeal. *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).

Rogers has failed to show that the Florida Supreme Court's denial of these claims was contrary to or an unreasonable application of clearly established federal law. Accordingly, Ground Sixteen will be denied.

## Ground Seventeen

"Cumulatively, the combination of procedural and substantive errors deprived Glen Rogers of a fundamentally fair trial guaranteed under the Sixth, Eighth, and Fourteenth Amendments. Appellate counsel failed to effectively litigate these errors on appeal." (Dkt. 1 at pg. 33).

Rogers alleges a cumulative impact claim based on "the sheer number and types of errors" alleged in the preceding grounds. Rogers suggests a cumulative analysis of his individual claims can furnish an additional basis upon which to afford him habeas relief. Such a claim does not, however, raise a cognizable basis for relief. See *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005) ("[N]ot even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief."); see also, *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir.)("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief."), *amended on other grounds*, 307 F.3d 459 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003).

The Florida Supreme Court, in denying Rogers' cumulative error claim, found that since each of Rogers' individual claims was either procedurally barred or without merit, there could be no cumulative error. *Rogers v. State*, 957 So. 2d at 553-54. Rogers has failed to show that the Florida Supreme Court's decision on Rogers's cumulative impact claim is contrary to or an unreasonable application of clearly established Supreme Court law. See *Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003)(Because "the sum of various zeroes remains zero," the claimed prejudicial effect of the trial attorneys' cumulative errors did not warrant habeas relief).

To the extent Rogers asserts that "appellate counsel failed to effectively litigate these errors on appeal" (see Dkt. 1 at pg. 33), "[m]ere assertions or conclusory allegations of ineffective assistance of counsel without factual support are insufficient to sustain an ineffective assistance claim." *United States v. McFarlane*, 881 F. Supp. 562, 570 (M.D. Fla. 1995)(citing *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992)). Here, Rogers does not present any specific facts regarding how appellate counsel was ineffective in litigating "these errors" on appeal. (See Dkt. 1 at pg. 33; Dkt. 13 at pgs. 36-41). Nor does he present any argument in support of his ineffective assistance of counsel claim. (Id.). Accordingly, Rogers' conclusory claim of ineffective assistance of counsel is facially insufficient.

Moreover, it is very difficult for this Court to address Rogers' ineffective assistance of counsel claim under Ground Seventeen when he fails to identify with specificity the errors "appellate counsel failed to effectively litigate." He asserts in his petition that he raised the

claims in Ground Seventeen in his state court "Amended 3.851 Motion for Postconviction Relief." (Dkt. 1 at pg. 33). However, Rogers' claim of ineffective assistance of appellate counsel was wholly conclusory; he did not specify which errors appellate counsel failed to effectively litigate, or how appellate counsel failed to effectively litigate them. (Respondent's Ex. B-1 at pgs. 78-79).

In his state habeas petition, Rogers did present the claim that appellate counsel was ineffective in failing to effectively argue on direct appeal that the trial court erred in failing to give a jury instruction regarding the mitigator of the influence of extreme mental or emotional disturbance. (Respondent's Ex. C-3 at pgs. 6-15). In denying this claim, the Florida Supreme Court stated:

> Rogers' final subclaim of alleged cumulative error is that appellate counsel provided ineffective assistance by failing to argue on direct appeal that the trial court erred in failing to give an instruction regarding the statutory mitigator of the influence of extreme mental or emotional disturbance. Specifically, Rogers argues that appellate counsel was ineffective for failing to research the law and cite cases, such as *Smith v. State*, 492 So. 2d 1063 (Fla. 1986), to support the contention that the trial court erred in failing to instruct the jury on the influence of extreme mental or emotional disturbance because Rogers had consumed alcohol on the day of the murder. However, appellate counsel raised this issue and cited several cases to support Rogers' assertion that the trial court erred in failing to consider, find, and instruct the jury on this statutory mitigator. Because this issue was adequately raised on direct appeal, appellate counsel did not provide ineffective assistance. Therefore, we deny relief on this cumulative error claim.

*Rogers v. State*, 957 So. 2d at 556.

The Florida Supreme Court correctly found that on direct appeal appellate counsel had raised, and presented argument in support of, the claim that the trial court erred in failing to

98

give the "extreme mental or emotional disturbance" instruction. (See Respondent's Ex. A-33 at pgs. 84-94). In state court, Rogers argued that appellate counsel was ineffective in failing to argue that in light of the evidence presented of his brain injury, alcohol abuse, porphyria, mental illness, and drug addiction, there was no doubt that he was under the influence of extreme mental or emotional disturbance. (Id. at pg. 7). Rogers also argued counsel was ineffective in failing to cite to *Bryant v. State*, 601 So. 2d 529 (Fla. 1992), *Smith v. State*, 492 So. 2d 1063 (Fla. 1986), and *Stewart v. State*, 558 So. 2d 416 (Fla. 1990) to support his claim that the trial court erred in failing to give the "extreme mental or emotional disturbance" instruction. (Id. at pgs. 6-14).

Appellate counsel did argue on direct appeal that the evidence presented clearly established the "extreme mental or emotional disturbance" mitigator (see Respondent's Ex. A-33 at pgs. 87-88) ("the 'extreme mental and emotional disturbance[]' mitigator was established, it was so clear from the evidence that it is hard to understand how the court could fail to recognize and consider it"), and therefore the trial court should have given that instruction (see Id. at pg. 89) ("Although it is customary for the prosecutor and the defense to request aggravators and mitigators, it is the responsibility of the court to correctly instruct the jury. The judge must decide which statutory aggravators and mitigators she will instruct on. It is her responsibility to compare these factors with the evidence to correctly instruct the jury..." ); (see Id. at pg. 94) ("Logical reasoning, based on the evidence presented, shows Rogers suffered extreme and substantial mental disturbance and impairment, all the time. The judge should have instructed on and found both mental mitigators..." ). Rogers argued

in state court, for example, that appellate counsel should have cited to *Bryant v. State* which stated in pertinent part that "Defendant is entitled to have the jury instructed on the rules of law applicable to this theory [that the felony was committed while Defendant was under the influence of extreme mental or emotional disturbance] of the defense if there is any evidence to support such instructions." *Id.* at 533 (quoting *Hooper v. State*, 476 So. 2d 1253, 1256 (Fla. 1983), *cert. denied*, 475 U.S. 1098 (1986)) (emphasis in original).

Although appellate counsel did not cite to *Bryant v. State* and the other two cases identified by Rogers, appellate counsel did raise, and present argument in support of, the issue that the trial court erred in failing to give the "extreme mental or emotional disturbance" instruction because the evidence supported giving the instruction.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance..."

*Strickland*, 466 U.S. at 689.

"An attorney's performance is deficient if he does not provide reasonably effective assistance." *Payne v. United States*, 566 F.3d 1276, 1277 (11th Cir. 2009) (citing *Strickland*, 466 U.S. at 687). On direct appeal in Rogers' case, appellate counsel argued that the evidence supported the "extreme mental or emotional disturbance" mitigator, and that the trial court erred in failing to give the instruction. Accordingly, Rogers' appellate counsel

provided him with reasonably effective assistance, and therefore appellate counsel's performance was not deficient. See *Hall v. Moore*, 792 So. 2d 447, 449 (Fla. 2001) ("[I]f an issue was actually raised on direct appeal, the Court will not consider a claim that appellate counsel was ineffective for failing to raise additional arguments in support of the claim.") (quoting *Rutherford v. Moore*, 774 So. 2d 637, 645 (Fla. 2000)).

Rogers has not demonstrated that the Florida Supreme Court's denial of this claim is an unreasonable application of *Strickland*. Accordingly, Ground Seventeen does not warrant relief.

**Ground Eighteen**

"Defendant's Eighth Amendment right against cruel and unusual punishment will be violated as Defendant may be incompetent at the time of execution." (Dkt. 1 at pg. 34).

In Ground Eighteen, Rogers essentially asserts that he may be incompetent at the time of his execution. Rogers raised this claim in his petition for writ of habeas corpus filed in the Florida Supreme Court. In denying the claim the Florida Supreme Court stated:

> In his final habeas claim, Rogers asserts that his Eighth Amendment rights will be violated because he may be incompetent at the time of execution. As we have previously held, this claim is not ripe for review until a death warrant has been issued, which has not occurred in this case. See *Griffin v. State*, 866 So. 2d 1, 21-22 (Fla. 2003). Therefore, we deny relief on this claim.

*Rogers v. State*, 957 So. 2d at 556.

Rogers acknowledges that Florida law requires that a death warrant be issued before a claim of incompetence to be executed can be asserted (Dkt. 1 at pgs. 34-35). He also

acknowledges that the same holding exists under federal law (Dkt. 13 at pg. 42). Accordingly, Rogers only raises this claim to preserve it for future review (Id.).[22]

Because there is no indication that the Governor has signed a death warrant, this claim is not ripe for review. Accordingly, habeas relief in not warranted under Ground Eighteen.

ACCORDINGLY, the Court **ORDERS** that:

1. Petitioner's petition for writ of habeas corpus (Dkt. 1) is **DENIED**.

2. The Clerk is directed to enter judgment against Petitioner, terminate any pending motions, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Rogers is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Rogers "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard*

---

[22]Rogers incorrectly asserts that "in order to preserve a competency to be executed claim, the claim must be raised in the initial petition for habeas corpus[.]" (Dkt. 1 at pg. 35). *See Tompkins v. Sec'y, Dep't of Corr.*, 557 F.3d 1257, 1259 (11th Cir. 2009) ("[A] petitioner's *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L. Ed. 2d 335 (1986), claim of incompetency to be executed because of his mental condition at the time of the scheduled execution is not one that is required to be brought in an initial habeas petition on pain of being treated as a second or successive petition. *Panetti*, 127 S. Ct. at 2855.").

*v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)),

or that "the issues presented were 'adequate to deserve encouragement to proceed further,'"

*Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S.

880, 893 n. 4 (1983)). Rogers has not made the requisite showing in these circumstances.

Finally, because Rogers is not entitled to a certificate of appealability, he is not entitled to

appeal *in forma pauperis*.

      **DONE** and **ORDERED** in Tampa, Florida on February 19, 2010.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

SA:sfc
Copy to: Counsel of Record